Argued January 6, reversed February 23, petition for
rehearing denied March 28, 1967

# SILVER EAGLE COMPANY, *Respondent, v.*
# NATIONAL UNION FIRE INSUR-
# ANCE COMPANY, *Appellant.*

423 P. 2d 944

*H. H. Phillips,* Portland, argued the cause for appellant. With him on the briefs were Jarvis B. Black and Phillips, Coughlin, Buell & Phillips, Portland.

*George W. Mead,* Portland, argued the cause for respondent. With him on the brief was Robert Clapperton, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

The defendant insurance company appeals a declaratory judgment to the effect that the plaintiff Silver Eagle was entitled to insurance coverage for certain claims filed against it after the cancellation of a comprehensive liability policy.

Silver Eagle is engaged in selling to the trucking industry a coupling device called a "Fifth Wheel." It is used in attaching large cargo trailers to trucks. Silver Eagle sold some 250 of the devices between March 1, 1964, and July 7, 1964, when it discontinued the sale of the device after receiving information that two accidents had been caused by defective units.

National Union had undertaken to cover Silver Eagle for products liability under an insuring agreement which took effect on January 1, 1964. The agreement was to expire one year later, subject to the reservation by the insurer of the right to cancel at any time upon giving ten days' written notice. Between July 3, 1964, and August 27, 1964, damage claims were made against Silver Eagle. The claims alleged that defective "Fifth Wheels" had caused accidents with resulting bodily injury and property damage. Silver

Eagle notified National Union of the claims, and on August 27, 1964, National Union gave ten days' notice in writing and canceled the policy effective September 11, 1964. (National Union has defended according to the terms of its contract certain claims arising prior to September 11, 1964, and these present no issue in this case.)

■ The question in this proceeding is whether National Union's cancellation was effective as to accidents occurring after September 11, 1964, which involved products sold during the policy period. The trial court held that the insurer had no right to cancel under the circumstances, notwithstanding contract language which purported to reserve that right. The trial court determined that "the only practical means of construing products liability insurance is to attach continuing liability for those products 'manufactured, sold, handled, or distributed' during the effective life of the policy. To hold otherwise," the court continued, "would permit an insurer to provide coverage for thousands of transactions and avoid liability [by prompt cancellation] for all but the first claim * * * *."

The insurance policy contains the following language:

### "INSURING AGREEMENTS

"* * * * * *

"*IV. Policy Period, Territory:* This policy applies only to accidents and occurrences which occur during the policy period within the United States of America, its territories or possessions, or Canada * * * *."

It is clear that such a policy provision effectively limits coverage to accidents which occurred during the

policy period. *Protex-A-Kar Co. v. Hartford Acc. etc. Co.*, 102 Cal App 2d 408, 227 P2d 509 (1951); *Landerman v. United States Fidelity & Guaranty Co.*, 25 Conn Supp 297, 203 A2d 150 (Super Ct 1964); *Troy v. London & Lancashire Indemnity Co.*, 129 NYS2d 84 (Sup Ct 1953); Annotation, 57 ALR2d 1385, 1390 (1958); Annotation, 45 ALR2d 994, 999 (1956).

■ Plaintiff's contention that the parties contemplated acceptance by the insurance company of all liability for accidents which occur by reason of transactions conducted during the policy period has no support in the contract. The language is precise. If the parties had bargained for Silver Eagle to be insured against liability by reason of defects in the products sold during the policy term regardless of the time of any accident, words were available to express such a bargain. See, e.g., *Kelley v. Indemnity Ins. Co. of North America*, 252 App Div 58, 297 NYS 228, affirmed 276 NY 606, 12 NE2d 599 (1937), where the policy of products liability insurance provided that the insurer would pay for loss by reason of liability imposed upon the insured for bodily injuries "due to the possession, consumption, handling or use, elsewhere than upon the premises of the assured, of any merchandise or product manufactured, handled, or distributed by the assured which has actually been sold to a purchaser for a consideration during the term of this endorsement * * *."

Similarly, in *Perma Fit Shoulder Pad Co. v. Tailored Trend*, 147 NYS2d 356 (Sup Ct 1955), the contract of insurance provided for payment of damages arising out of the use of products "manufactured, sold, handled or distributed by the insured if the accident occurs after the insured has relinquished posses-

sion thereof to others." The policy period was one year. The court construed the contract to mean that the insurer assumed liability to pay on plaintiff's behalf all sums it would be obligated to pay for injury to property in the use of its product manufactured and sold during the life of the policy. In neither the *Perma Fit* case nor the *Kelley* case did any provision appear limiting liability to "accidents and occurrences" within the policy period.

Silver Eagle argues that despite the plain language of the policy-period clause the insurer agreed to protect plaintiff against accidents which arose out of products which it manufactured and distributed, and that, relying on this agreement, plaintiff fully advised the insurer of the details of the defective equipment and the potential hazard. Once the details of the increased hazard were known, it was impossible to obtain other insurance, a fact which was known to National Union. Therefore, Silver Eagle contends, as a matter of public policy National Union should be prohibited from canceling the contract when it appears that substantial liability may result.

This argument is, of course, an appeal to redraft, rather than to enforce, a contract. The contract is not ambiguous. Under "CONDITIONS" in the policy, section 19, entitled *"Cancelation"*, reads:

"1. This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. Subject to paragraph 2 hereof, this policy may be canceled at any time by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than 10 days thereafter such

cancelation shall be effective  *  *  *. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period  *  *  *."

Either party could, at any time, cancel the policy. *Jablonski v. Washington Co. Mut. Fire Ins. Co.,* 13 Ill App 2d 499, 142 NE2d 170 (1957); Annotation, 68 ALR 1171 (1930). The policy period is, therefore, subject to the cancellation provision. We hold that the effective date of cancellation marked the end of the policy period.

We reject plaintiff's argument that the instant situation is the same as the landslide and fire cases where the losses were already certainties when the insurance policies were canceled. For example, in *Harman v. American Casualty Co. of Reading, Pa.,* 155 F Supp 612 (SD Cal 1957), the policy insured against "all physical loss." While the policy was in effect, a massive and continuing land movement affected the insured property, and damage was substantial and continuous. During the land movement, which showed no sign of abating, the insurance company attempted to cancel its policy, but the court declared that the company had agreed "to indemnify the insured against loss from contingencies which may or may not occur. When the contingency arises, then and only then does the liability of the insurer become a contractual obligation  *  *  *. The contingency having occurred, there is nothing the insurer can unilaterally do to alter the policy with respect to a loss that is already in being." 155 F Supp at 614. See also *Pfeiffer v. General Insurance Corp.,* 185 F Supp 605 (ND Cal 1960); *Snapp v. State Farm Fire & Cas. Co.,* 206 Cal App 2d 827, 24

Cal Rptr 44 (Dist Ct App 1962); *Home Insurance Co. of New York v. Heck*, 65 Ill 111 (1872).

There is in the instant case no element of physical inevitability. Potential losses had not become accidents in the terms of the contractual obligation. There is nothing in the record to show that future accidents could not have been avoided by a vigorous effort to call back the defective merchandise. The case is not, therefore, a landslide or prairie-fire case in which the loss had become unavoidable at the time notice of cancellation was given.

Finally, Silver Eagle seeks to construct an argument from the following clause in the contract:

## "CONDITIONS

"* * * * *

"*6. Limits of Liability—Products—Coverages B and D*: Subject to the limit of liability with respect to 'each accident or occurrence,' the limits of bodily injury liability and property damage liability stated in the declarations as 'aggregate products' are respectively the total limits of the company's liability for all damages arising out of the products hazard. All such damages arising out of one lot of goods or products prepared or acquired by the named insured or by another trading under his name shall be considered as arising out of one accident or occurrence."

Plaintiff contends that when this clause is read in conjunction with the "policy period" clause the fair import must be that if one accident involving a defective product occurs during the life of the policy then all other accidents involving products of the same lot are covered, whether they occur one month or several years from the expiration date of the policy. Such an interpretation is not only contrary to the express terms

of the contract, but would be so novel as to require specific language. If all such damages arising from one lot are to be considered one accident, then when damages from one accident arise, all accidents would be deemed to be within the policy period. The context of the clause, which in no way relates to the policy-period clause, precludes such an interpretation.

■■■ While this court will construe a doubtful insurance contract against the insurer who wrote it, courts do not ordinarily write contracts of insurance for the parties. When the purpose and intent of a clause is to limit the insurer's liability in total damages regardless of the number of defective products sold of one lot, we are not at liberty to extend such a clause to cover an infinite variety of accidents occurring after the term of the contract has expired. The clause simply means that the company will not pay more than $100,000 property damages and $300,000 bodily injury liability for any single "lot" of a defective product.

Reversed.