143 N.J. Super. 396 (1976)
363 A.2d 361
JOHN DEODATO, PLAINTIFF,
v.
HARTFORD INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 28, 1976.
*398 Mr. Peter Peletz, Jr. for plaintiff (Messr. George J. Sokalski, attorney).
Mr. Victor C. Harwood, III for defendant (Messrs. Harwood, Lloyd, Kelly, Ryan, Coyle & Wulster, attorneys).
ROSENBERG, J.S.C., Retired and Temporarily Assigned on Recall.
These are cross-motions for summary judgment brought by plaintiff John Deodato (Deodato) and defendant Hartford Insurance Company (Hartford). The parties have stipulated to the following facts. Deodato, a contractor, in 1969 constructed a roof on the premises of Pope Chemical Corp. From September 15, 1969 to September 15, 1970 plaintiff was insured under Hartford Policy #18 C 815913. This policy was renewed annually. Policy #18 C 833566 constituted the last policy renewed. That policy *399 was to run from September 15, 1972 to September 15, 1973; however, the policy was cancelled on January 22, 1973 for nonpayment of the premium. On June 13, 1973 Thermwell Products, a tenant on the premises owned by Pope Chemical, sustained damage when the roof was "ripped off" the building.
An action was commenced against Deodato by Thermwell. Hartford was notified of the suit and a demand made to indemnify and defend Deodato in accordance with the policy. Hartford refused to defend the action. The Thermwell suit was settled during trial for $18,500. Plaintiff contributed $1,500 toward settlement of the suit and incurred legal costs of $2,622.75. Deodato now seeks a declaratory judgment finding that Hartford was obligated to defend and otherwise hold plaintiff harmless. Further, plaintiff seeks attorney's fees and costs.
The parties have also stipulated that "completed operations" coverage was part of the contract of insurance when the policies were in force. The "completed operations hazards" provision includes:
* * * bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, *400 but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include bodily injury or property damage arising out of
(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations".
The policy also contains an "occurrence" provision. An occurrence is defined as "an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Further, Section IV, "Policy Period; Territory," limits coverage "to bodily injury or property damage which occurs during the policy period within the policy territory." The issue presented to the court is whether the "completed operations" protection in force in the 1969-70 policy of insurance, when the roof was constructed, provides coverage for damage to the roof occurring in June 1973.
An insurer's duty to defend emanates from the coverage afforded under the policy. Hackensack Water Co. v. General Accident, etc., Ltd., 84 N.J. Super. 479, 482 (App. Div. 1964). The obligation to defend any suit, "even if any of the allegations of the suit are groundless, false or fraudulent," does not expose the insurer to an open-ended duty. The covenant to defend is directly linked to the covenant to pay. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388 (1970); Ohio Casualty Ins. Co. v. Flanigan, 44 N.J. 504, 514 (1965). The insurer's duty to defend arises when the complaint states a claim constituting a risk insured against. Danek v. Hommer, 28 N.J. Super. 68 (App. Div. 1953), aff'd 15 N.J. 573 (1954). The complaint "should be laid alongside the policy and a determination *401 made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." Danek, supra at 77. Thus, the policy must be examined to determine if coverage was to extend to damage sustained in 1973.
In construing a policy of insurance, certain canons of construction are well settled. When controlling language will support two separate constructions, the court must favor the construction permitting coverage. Courts are to protect the insured to "the full extent that any fair interpretation will allow." Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur., 35 N.J. 1, 7 (1961); Kievit v. Loyal Protective Life Ins. Co., etc., 34 N.J. 475 (1961). Ambiguities are to be resolved in favor of the insured. Bryan Constr. Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972). Where an exclusion or exception is at issue, designed to limit coverage, strict construction is required. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970). The policy considerations underlying strict construction to aid the insured are discussed in Kievit, supra:
When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow." [34 N.J. at 482]
However, when the policy of insurance is clear and unambiguous, the court may not rewrite a better contract of insurance for the parties, but must enforce the agreement as it finds it. James v. Federal Ins. Co., 5 N.J. 21, 24 (1950); Boswell v. Travelers Indem. Co., 38 N.J. Super. 599, 604 (App Div. 1956).
To be liable under the terms of the policy the occurrence must arise during the policy period. The phrase "occurrence during the policy period" was discussed in Muller *402 Fuel Oil Co., v. Ins. Co. of No. Amer., 95 N.J. Super. 564 (App. Div. 1967).
(w)e are aware of those cases interpreting the words "occurrence during the policy period," where there is a time interval between some negligent act and damage resulting therefrom. They are collected in the annotation in 57 A.L.R.2d 1385. As a general rule the time of the "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. "The time of the accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability." (citations omitted) Id. at 578; see also Yarrington v. Camarota et al., 138 N.J. Super. 398 (App. Div. 1971); Rotwein et al. v. General Accident Group & Cas. Co., 103 N.J. Super. 406 (Law Div. 1968).
Parenthetically, the court notes that an occurrence need not be a sudden event, but may be a process, as long as the incident or event is not designed or expected. See McGroarty v. Great American Insurance Co., 43 A.D.2d 368, 351 N.Y.S.2d 428 (App. Div. 2d Dept. 1974) (construction cracks); Gruol Construction Co. v. Insurance Co. of No. Amer., 11 Wash. App. 632, 524 P.2d 427 (Ct. App. 1974) (dry rot); City of Kimball v. St. Paul Fire and Marine Ins. Co., 190 Neb. 152, 206 N.W. 2d 632 (S.Ct. 1973) (seepage into sewer system); Kissel v. Aetna Casualty & Surety Company, 380 S.W.2d 497 (St. Louis Ct. App. Mo. 1964) (sinking of earth at construction site); The Travelers v. Humming Bird Coal Company, 371 S.W.2d 35 (Ct. App. Ky. 1963) (slippage of earth mass due to strip mining). Here, the occurrence is a singular event, not a process. The occurrence in this instance is the destruction of the roof in June 1973. Although the negligence occurred when the roof was constructed in 1969, the mere negligent acts of plaintiff at that time did not constitute an "occurrence."
Plaintiff raises the argument that "completed operations" provisions extend coverage beyond the termination date of the policy. This argument was expressly rejected by the court in Oceanonics, Inc. v. Petroleum Distributing Company, *403 280 So.2d 874 (Ct. App. La. 1973). In that case a weld was performed on a boom of a crane on August 13, 1970. A policy of insurance, including a completed operations provision, was in effect from September 12, 1969 to September 12, 1970. While in use the boom collapsed on November 8, 1970, and an action claiming negligence was brought against the company performing the welding. The court held that when damage occurred to the crane boom more than two months after the policy had expired, the completed operations provisions did not afford coverage. Similar results have been reached by courts considering the effects of "products hazard," Kirkham, Michael & Assoc., Inc. v. Travelers Indem. Co., 361 F. Supp. 189 (S.D.S.D. 1973) aff'd 493 F.2d 475 (8th Cir.1974); Brown v. First Insurance Co. of Hawaii, 424 F.2d 680 (9th Cir.1970); Palardy v. Canadian Universal Insurance Company, 360 F.2d 1007 (2nd Cir.1966); Scott v. Keever, 212 Kan. 719, 512 P.2d 346 (S.Ct. 1973); Silver Eagle Co. v. National Union Fire Insurance Co., 246 Or. 398, 423 P.2d 944 (S.Ct. 1967); Landerman v. United States Fidelity & Guaranty Co., 25 Conn. 297, 203 A.2d 150 (Sup. Ct. 1964), "professional liability," Rotwein et al. v. General Accident Group & Cas. Co., supra; Livingston Par. Sch. Bd. v. Fireman's Fund Am. Ins. Co., 282 So.2d 478 (S.Ct. La. 1973) and "multiperil" policy provisions, Yarrington v. Camarota et al., supra, where the negligence transpired during the policy period, but damage appeared after the policy expired.
As a matter of law, the court holds that the damage to the roof in 1973 was not an occurrence during the policy period. In reaching this result the court finds that enforcement of the policy provisions was neither unconscionable nor unfair since, where plaintiff had an opportunity to continue the coverage, there can be no such claim. Rotwein et al., supra, 103 N.J. Super. at 417. Deodato clearly had opportunity to renew the policy on a continuing basis, but instead chose to let the policy lapse through nonpayment of the premium.
*404 Since there are no genuine issues of material fact and it is clear as a matter of law, defendant's motion for summary judgment will be granted and plaintiff's cross motion for summary judgment denied.