[Civ. No. 49137. Second Dist., Div. Two. Feb. 25, 1977.]

GENE W. ARANT, Plaintiff and Appellant, v.
SIGNAL INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Hiestand & Bower and Herbert H. Hiestand, Jr., for Plaintiff and Appellant.

Overton, Lyman & Prince and Roy M. Brisbois for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—Attorney Gene W. Arant appeals from a judgment in favor of Signal Insurance Company (Signal) the effect of which is that

Signal was not required by the terms of a legal malpractice insurance policy it had issued to Arant to defend and indemnify him in an action brought against him by Sidney P. Held (Held action).

Signal, on September 8, 1971, issued the first of three consecutive annual policies insuring Arant[1] against liability arising from acts of legal malpractice, and the last of the three lapsed on September 8, 1974. The issue is whether the acts of alleged professional malpractice upon which the Held action is predicated are within the policy periods (1971-1974).

The lawyer-client relationship between Held and Arant commenced in 1955. The allegedly erroneous advice upon which the Held action is predicated was first tendered in September 1962 and reiterated on several occasions until 1967. Because of the complexity of Held's legal situation during those years it is necessary to set forth the entire background with respect to which Arant's advice was tendered. For this purpose we set forth in the Appendix hereto a summary of the allegations of the complaint in the Held action as recited in Arant's brief since Signal's decision not to assume the defense was necessarily predicated on the facts alleged therein.

As that summary discloses, the advice which was the fountain of Held's misfortunes in the Nova-Tech litigation was that Held was entitled to royalties by virtue of the provisions of Held's employment contract with Nova-Tech which had been drafted by Arant. The adverse impact of this advice was not experienced until it was, in effect, retracted in September 1972 during Arant's deposition in the Nova-Tech-Held action.

It is settled that the time of the *occurrence* of an accident within the meaning of an indemnity policy is the time that the damages insured against actually accrue. (*Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 626 [127 Cal.Rptr. 681].) In *Tijsseling,* a comprehensive, general liability policy was held not to apply to damages arising from an encroachment when the encroachment was discovered by the policy holder in the policy period but when it had actually come about prior to the policy's commencement date. (Accord. *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379].) Signal maintains that *Tijsseling* applies because, although Held did not discover the allegedly erroneous nature of Arant's

[1]The insured was the firm of Beehler, Arant, Jagger & Bethel.

advice until 1972, the advice itself, i.e., the *occurrence* causing damage, had been rendered in 1962-1967 prior to the commencement of the policy in 1971. This construction, Signal argues, is in complete accord with the terms of the policy which expressly excludes from coverage "acts committed prior to the beginning of the policy period."[2]

Arant maintains that, although the act of professional negligence charged in the Held action is his, Arant's, advice, the adverse impact of that advice did not occur until September 1972 when he retracted it. Relying upon *Budd* v. *Nixen,* 6 Cal.3d 195, 198 [98 Cal.Rptr. 849, 491 P.2d 433],[3] he contends that Held's decision to compromise the Nova-Tech claim, as a result of which Held paid Nova-Tech $130,000, marked the time that Held was damaged and therefore the time that the cause of action accrued.

"The statute of limitations, as it applies to actions for fraud and misrepresentation, establishes the time at which a cause of action accrues. It does not fix the time at which the injury giving rise to the cause of action accrued." (*Tijsseling* v. *General Acc. etc. Assur. Corp., supra,* 55 Cal.App.3d 623, 628.)

The injury, or harm, in this case was done when the advice, later retracted as erroneous, was given concerning the scope of Held's contract with Nova-Tech. Held, it is true, did not suffer damages until after the advice was given[4] and professional liability insurance, as noted by the Supreme Court, indemnifies the insured against the consequences of the negligent act.[5] (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 446 [91 Cal.Rptr. 6, 476 P.2d

---

[2]This argument is buttressed by the following finding of fact entered by the trial court: "The application for insurance with SIGNAL INSURANCE COMPANY completed by GENE W. ARANT's firm establishes that said firm made an affirmative decision to not purchase 'Prior Acts' coverage."

[3]"We hold that a cause of action for legal malpractice does not accrue until the client suffers damage . . . ." (*Budd* v. *Nixen,* 6 Cal.3d at 198 [98 Cal.Rptr. 849, 491 P.2d 433].)

[4]Even if we adopted Arant's view of the effect of *Budd* v. *Nixen* on this case, we would have to hold for Signal. Contrary to Arant's assertion, it is clear that the payment of $130,000 to Nova-Tech in 1972 is not dispositive as to the time Held sustained damages; as observed in *Budd* (6 Cal.3d at 201), he may well have sustained damages as soon as he was compelled to defend the Nova-Tech action which was commenced in 1969. Thus the cause of action, given Arant's view of the law, accrued in 1969 and prior to the commencement of the policy period.

[5]The distinction is between indemnity against loss, or at bench, and indemnity against liability. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 446 [91 Cal.Rptr. 6, 476 P.2d 406].)

406].) Nevertheless, the policy cannot be extended to indemnify against the consequences of an act when the act itself took place beyond the limits of the policy period. The operation, or coverage, of the policy at bench is predicated on "any act, error or omission" of the insured. The assertedly negligent advice upon which Arant's liability to Held is predicated was rendered in 1962-1967, prior to the commencement of the policy period, and Signal was therefore not required to defend and indemnify Arant.

We note in conclusion that this case differs from *Budd* v. *Nixen* and its companion case *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] in the pragmatic respect that the ultimate damages which assertedly were the result of the lawyer's error were sustained in this case by reason of a settlement and not a judgment against the client as in *Nixen* and *Neel.* Nothing in this opinion should therefore be construed as an expression of opinion on the correctness of either the advice originally rendered by Arant (1962-1967) or his opinion offered in 1972.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied March 22, 1977, and appellant's petition for a hearing by the Supreme Court was denied April 28, 1977.

## APPENDIX

"During the year 1955, Sidney Held (hereinafter Held) formed Nova-Tech, Inc. (Nova-Tech), a California corporation to engage in the manufacture and sale of certain electronic products. At the time of its organization, Held was the president and sole stockholder of said corporation. At and after the time of the organization of Nova-Tech, Arant was employed by that corporation to handle its patent affairs as well as those of Held. In 1959, Nova-Tech sold a portion of its capital stock to the public. Held continued thereafter as its principal shareholder, president and chief executive officer. Arant continued to represent Held and the corporation in patent matters.

"In the forepart of 1962, Held designed a certain radio direction finder product (Product) to be manufactured and marketed by Nova-Tech. As a part of that design,

Held invented a unique reading scale (Invention) which became a part of the Product and was essential to its designed operation. In July, 1962, Held employed Arant to represent him in connection with said invention. In addition, Held employed defendant, Arant, to advise him in connection with the legal relationship between himself and Nova-Tech created by the Invention and the contemplated patent application and patent thereon.

"Arant advised that in his opinion, Held, as the inventor was the owner of the Invention subject to a nonexclusive shop right in Nova-Tech. He advised further that under said circumstances Nova-Tech would be in a position to manufacture and sell the Product on a nonexclusive basis and that he, Held, was free to license others or to manufacture and sell products containing the Invention for his own account. Arant further advised that by reason of the independent shareholders of Nova-Tech, it would be highly desirable to first propose that Nova-Tech take an exclusive license to manufacture and sell products embodying the Invention in consideration for appropriate royalties.

"Held then consulted with Arant concerning whether or not some arrangements could be made to handle all future inventions which he might make in the same manner without the necessity of repeated and individual arrangements. Thereafter, in consultation with Held's civil attorney, it was decided to propose to Nova-Tech that Held be granted an employment contract for a fixed term of years, settling not only the terms of his employment but to include a provision covering the relationship between Held and Nova-Tech in connection with the Invention and all future inventions which Held might make.

"Held employed Arant to prepare those provisions of the proposed employment contract necessary and desirable to carry out the arrangement pursuant to which Held would grant to Nova-Tech an exclusive license in connection with the Invention and all subsequent inventions of Held which might become embodied in products manufactured and sold by Nova-Tech.

"Arant prepared the contractual provisions and the recommendations of Arant were embodied in the employment contract. The board of directors of Nova-Tech approved and authorized the execution of said employment contract on or about September 12, 1962 and it was ratified by the shareholders of Nova-Tech on or about February 1, 1963.

"Following ratification, in March, 1963, Arant prepared the necessary documents to cause Held to execute, and to cause Nova-Tech to accept and file with the United States Patent Office an exclusive license agreement (pursuant to which Nova-Tech was granted an exclusive license to manufacture and sell the Invention) and to cause Nova-Tech to pay and Held to accept the royalties provided for in said employment contract.

"On or about March 20, 1963, Held called to the attention of Arant the invention and royalty provisions of the employment agreement prepared by Arant which appeared to Held to exclude from the application of said employment agreement the Invention. In response to Held's inquiry, Arant reaffirmed that the provisions drawn by him did relate and apply to the Invention and all subsequent inventions of Held. Arant thereafter in June 1963 informed the Certified Public Accountant of Nova-Tech, for use in the preparation of the annual statement required by law, that Held was entitled to royalties pursuant to said employment contract in connection with the Invention.

"No royalties upon the invention were paid by Nova-Tech or accepted by Held until after Arant reaffirmed his advice as aforesaid. Relying on the advice of Arant, Held thereafter accepted royalties pursuant to the employment contract. Had Held known that there was any legal question regarding the propriety thereof, he would have taken remedial action to eliminate any such question or, failing that, would have licensed others to manufacture and sell products embodying the Invention.

"Held continued to receive royalties on all products manufactured and sold by Nova-Tech embodying the Invention until August of 1967. Arant continued to act as attorney for Held and Nova-Tech in connection with said matter and all other patent causes and matters. In August 1967, Nova-Tech elected a new president and chief executive officer. At said time, Held and said new president, acting on behalf of

Nova-Tech, negotiated modifications to said employment agreement of September 12, 1962, which, among other things, ratified and confirmed Held's right to receive royalties on the Invention. During said negotiations, Arant acted as attorney for Held in connection with the reaffirmation of Held's right to receive said royalties. During said negotiations, Arant again reaffirmed that Held was, under his contractual relationships with Nova-Tech entitled to said royalties and entitled to continue to receive royalties on manufacture and sales in the future. Said employment contract was in fact modified and the right to receive royalties reaffirmed by new contracts in writing executed on or about August 22, 1967.

"Held entered into said modification agreement in reliance upon the reaffirmation of Arant's advice as aforesaid. Had Held known there was any legal question regarding his right to receive royalties from Nova-Tech in connection with the Invention, he would have taken remedial action to eliminate any such question or, failing that, would have licensed others to manufacture and sell products embodying the Invention.

"Held continued to receive royalties under the employment contract as modified until May 1969 when a dispute concerning other provisions of the contract arose between Held and Nova-Tech. Arant continued to act as attorney for Held in patent matters.

"In late November 1969, Nova-Tech commenced an action against Held in the Superior Court, wherein, among other things, it was alleged that Held had obtained Nova-Tech's consent to the modification of the employment contract by fraudulently representing that the original contract applied to the Invention when in fact it did not. In February 1971, prior to disposition of the Superior Court action, Nova-Tech filed bankruptcy proceedings and was subsequently adjudged a bankrupt. Held's claims to royalties, compensation and retirement benefits under the employment contract as modified, accruing after May 1969, which would have been paid to date of bankruptcy but for the Superior Court action, thereby became valueless.

"In the Nova-Tech Superior Court action in defense of the allegation of fraud *Held relied* upon the 1962 employment agreement prepared by Arant, the documents implementing the royalty provisions thereof prepared by Arant, upon the actions and conduct of Arant in connection therewith, upon the specific advice of Arant and upon the continuous affirmation thereof by Arant.

"On September 6, 1972, the deposition of Arant was taken by the attorneys for Held in said Superior Court action. Arant there testified that in the forepart of 1963 and in particular February through June of 1963 he was then of the opinion that the employment contract did *not* cover the Invention, that his opinion was that Held was the inventor thereof and as such was the owner of the Invention subject to the nonexclusive shop right of Nova-Tech and that the Invention would require a separate agreement with Nova-Tech in order to be properly covered. *Such testimony by Arant was the first knowledge and notice that Held received* that Arant would, as a witness, testify in repudiation of the legal advice theretofore given and in repudiation of the legal effect of the steps which Arant had taken to secure the mutual rights of Held and Nova-Tech under the employment contracts.

"*As a direct and proximate result of the testimony of Arant,* Held thereafter settled and compromised the Superior Court action with Nova-Tech and did repay to Nova-Tech the sum of $81,957.92, being royalties paid to Held by reason of the Invention during the years 1963, 1964 and a portion of 1965 together with interest thereon in the sum of $48,042.08, a total of $130,000.00."