[S.F. No. 23731. Sept. 29, 1978.]

INSURANCE COMPANY OF NORTH AMERICA,
Plaintiff and Respondent, v.
SAM HARRIS CONSTRUCTION COMPANY, INC., et al.,
Defendants and Appellants.

410

■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Robert Lloyd for Defendants and Appellants.

Philip R. McCowan, Popelka, Allard, McCowan & Jones and Kirkland & Packard for Plaintiff and Respondent.

**OPINION**

**NEWMAN, J.**—We are concerned here with a liability and indemnity insurance policy that covered defendants' airplane. Coverage G of the policy protected against liability for injury or destruction of property "arising out of the . . . maintenance . . . of the aircraft." The policy applied, however, only to "occurrences or accidents which happen during the policy period"; and the period stated was from September 3, 1971, to July 1, 1972.[1]

On April 19, 1972, after they had sold the plane, defendants cancelled their coverage and received a $626 premium refund for the balance of the policy period (April 19 to July 1). On April 21, in the possession of its new owner, the plane crashed and was destroyed.

■■■ The new owner sued, alleging that defendants "negligently . . . maintained, repaired, serviced, owned, sold and operated the aircraft . . . ." Defendants requested that the insurer defend, whereupon the insurer filed this action for declaratory relief. The trial court ruled that there were no obligations under the policy because defendants were not insured at the time of the crash. The court relied on the rule that "the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when

---

[1]Coverage G and the policy-period clause read as follows:

"Coverage G . . . To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages: (1) including damages for care and loss of services, because of bodily injury, sickness, disease and, if arising out of the foregoing, mental anguish, including death at any time resulting therefrom, sustained by any person and arising out of the . . . maintenance . . . of the aircraft as described in this policy . . . (2) for injury to or destruction of property . . . caused by accident, and arising out of the . . . maintenance . . . of the aircraft . . . ."

"This policy applies only to occurrences or accidents which happen during the policy period and within the United States of America, its territories or possessions, Canada or Mexico or while enroute between points within these geographical limits."

the complaining party was actually damaged." (*Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379]; *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 626 [127 Cal.Rptr. 681].)

In our view that rule is not applicable to this case. The issue here turns on the meaning of "occurrences or accidents . . . during the policy period." Those words differ from the words construed in *Remmer* and *Tijsseling.* Further, in those cases the policies themselves defined "occurrence" to mean an accident causing injury during the policy period. The policy here, however, defines neither "occurrences" nor "accidents." The meaning of the two words must, therefore, be ascertained by reference to the insured's reasonable expectation of coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267 [54 Cal.Rptr. 104, 419 P.2d 168].) Did that expectation include coverage for negligent maintenance during the policy period that caused an injury after the policy period had expired?

Defendants contend they purchased the policy with an expectation that the insurer would defend against suits based on "occurrences" as well as "accidents"; that negligent maintenance may reasonably be considered to be an occurrence; and that, because the policy covered "occurrences or accidents . . . during the policy period" the timing of the accident is not determinative.

The words "occurrences" and "accidents" are linked here by the conjunction "or," a term that usually introduces the second of two alternatives. Sometimes the two words are used synonymously. Here, however, they do not appear redundant. They rather suggest that accidents are distinguishable from occurrences.

"Occurrence" has been described as "the general word for anything that happens or takes place," as "something that occurs; event; incident." (Webster's New World Dict. (2d college ed. 1974) p. 984.) It could refer to damage-causing, nonaccidental events such as the theft, robbery, and pilferage that appear to be covered under the "All Risks Physical Damage Coverage" provisions of this policy. It could also refer, though, to acts implicitly included in Coverage G; e.g., negligent repairs that do not cause immediate injury but do result in a later accident.

"It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. . ... [I]f

the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].)　　We therefore rule that negligent maintenance of the plane within the policy period was an occurrence covered by the policy even though the accident caused thereby did not happen until after the policy period had expired.

Since the buyer's complaint against defendants alleged such an occurrence, the insurer had a duty to defend the action. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 276-277.)

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment for defendants declaring the insurer's duty in accord with the views expressed herein.

Bird, C. J., Tobriner, J., and Mosk, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. The aircraft liability policy involved in this case expressly applied only to those "occurrences or accidents" which happen during the policy period. The damages for which indemnity is sought herein concededly were incurred in a plane crash occurring after the policy had terminated. The accident allegedly resulted, however, from the insured's negligence in maintaining and repairing the aircraft *during* the policy period. Did the insured's alleged negligence constitute an "occurrence" within the meaning of the policy, so that coverage would extend to damages incurred after the policy had terminated? I do not believe so and conclude that, under the circumstances in this case, the insured could not reasonably have expected such coverage. Accordingly, I would affirm the trial court's judgment in the insurer's favor.

I amplify briefly on the majority's recitation of the facts and respective contentions.

Defendant (the insured) owned and operated the subject airplane in the course of its general contracting business. The policy in question was

an aircraft owners liability policy covering the period from September 3, 1971, to July 1, 1972. On April 19, 1972, the insured informed plaintiff carrier that the subject airplane should be deleted from the policy. (Apparently, by this time defendant had sold the aircraft to a third party.) Plaintiff, responding to defendant's request, prepared and sent to defendant an indorsement cancelling coverage and simultaneously returned to defendant the unearned premium of $626 for the period from April 19, 1972, to July 1, 1972. On April 21, 1972, while being operated by the new owner, the plane crashed on takeoff and was destroyed.

The new owner filed suit against defendant insured, asserting theories of misrepresentation, design defects, and negligence in maintaining, servicing and repairing the aircraft. The insured tendered defense of the suit to plaintiff, who thereupon filed the present declaratory relief action against defendant to determine whether it was legally obligated to provide a defense and indemnify defendant for any damages awarded in the foregoing action. The trial court, following an extensive review of the applicable authorities, ruled in plaintiff's favor.

The subject policy covered both physical damage to the plane, whether or not in flight, as well as bodily injury and property damage liability "arising out of the ownership, maintenance or use of the aircraft as described in this policy." Under Condition 1, it was provided that "This policy applies only to *occurrences or accidents* which happen during the policy period and within the United States of America, its territories or possessions, Canada or Mexico or while enroute between points within these geographical limits." (Italics added.)

Plaintiff carrier, relying upon the foregoing language, contends that since the accident of April 21, 1972, occurred after the insured had deleted the plane from the policy, no liability coverage then existed. Defendant insured, on the other hand, argues that its own alleged negligence in maintaining the aircraft may properly be considered an "occurrence" which happened during the policy period. The trial court ruled for plaintiff and held that the term "occurrences or accidents" necessarily referred to those unexpected, fortuitous events (i.e., crashes, collisions, fires, etc.) which, during the policy period, produce the damage for which recovery is sought.

I agree with the reasoning of the trial court which in its memorandum opinion stated: "Defendant contends . . . that the loss was caused by an

occurrence or accident arising out of the ownership, maintenance, or use of the aircraft with no limitation as to policy period or any other period of time. [¶] Under this theory, defendant would, in effect, be covered in perpetuity. The parties to the insurance contract certainly had no such intention. The argument simply overlooks the language of the policy which relates to indemnification for any loss . . . arising out of the ownership, maintenance, or use of the aircraft as described in the policy . . . , and when coverage was terminated on April 19, 1972, the aircraft was not described in this policy when the accident occurred on April 21, 1972."

The trial court observed that it is a general rule in this and other states that " 'the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, *but the time when the complaining party was actually damaged.*' " (Italics added, *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 626 [127 Cal.Rptr. 681]; *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379]; see *Arant* v. *Signal Ins. Co.* (1977) 67 Cal.App.3d 514, 516 [136 Cal.Rptr. 689]; Annot., 57 A.L.R.2d 1385, 1389 and cases cited.)

I readily acknowledge, as defendant points out, that the foregoing authorities are not directly on point, for they involved particular policy language not identical to the "occurrences or accidents" language used here. For example, in both *Tijsseling* and *Remmer,* the policies at issue defined the word "occurrence" to mean an "accident" resulting in injury during the policy period. No such definition exists in the present case. Nevertheless, I fully agree with the trial court herein that "In the context in which the words ['occurrences' and 'accidents'] are used in this policy, it is clear that their meaning is synonymous and that the word 'occurrences' relates to and means accidents or fortuitous events which result in injury, loss or hurt." (Accord, *Truck Insurance Exchange* v. *Rohde* (1956) 49 Wn.2d 465 [303 P.2d 659, 661, 55 A.L.R.2d 1288].)

Indeed, the word "occurrence" is generally defined as "A coming or happening; any incident or event, especially one that happens without being designed or expected." (Black's Law Dict. (4th rev. ed. 1968) p. 1231); see Webster's New World Dict. (2d college ed. 1974) p. 984.) Thus, courts in other states have held that the word "occurrence" in liability policies refers to the unexpected event causing damage, rather than as herein asserted by the majority, the preliminary negligence or

other acts ultimately producing that event. (See *Deodato* v. *Hartford Insurance Company* (1976) 143 N.J.Super. 396 [363 A.2d 361, 365]; *Silver Eagle Co.* v. *National Union Fire Insurance Co.* (1967) 246 Ore. 398 [423 P.2d 944, 945-946, 40 A.L.R.3d 1432].) As stated in *Deodato,* "an occurrence need not be a sudden event, but may be a process, as long as the incident or event is not designed or expected. [Citations.] . . . The occurrence in this instance is the destruction of the roof in June 1973. Although the negligence occurred when the roof was constructed in 1969, *the mere negligent acts of plaintiff at that time did not constitute an 'occurrence'* [under the liability policy]." (P. 365, italics added.)

I note that the word "occurrence" is reasonably susceptible to one interpretation which would not be wholly synonymous with the word "accident." It is possible that the former word was used to signify nonaccidental, though unexpected, events producing damage such as "lightning, theft, robbery or pilferage," of the type covered under the "all risks physical damage coverage" provisions of the subject policy. In my opinion, however, the term "occurrence" is not so broad as to include the insured's very own acts of negligent maintenance or repair. The policy coverage was limited both in a temporal sense, from September 3, 1971, to April 19, 1972, and geographically as well, within the United States, Canada, or Mexico or between points within these areas.

The majority holds that the subject policy is ambiguous in failing to define the term "occurrence" (unlike the policies in both *Tijsseling* and *Remmer, supra*), and that accordingly, under familiar principles, the policy must be construed in favor of the insured. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) In this connection, it is likewise clear, however, that in resolving any ambiguity we should attempt to determine the *reasonable* expectations of the insured and interpret the policy in the light thereof (*id.,* pp. 269-271). In the present case, I conclude that the insured could not reasonably have expected, and did not expect, liability coverage to continue in its favor after it had sold the airplane, cancelled its insurance, and received a full refund for the unearned portion of its premium. Neither the insured nor the carrier reasonably expected insurance coverage to remain open-ended, indefinite in duration, and free. Under such policy construction when would the exposure end?

It must be kept in mind that the insured was not in the business of selling or repairing aircraft, and accordingly that the subject policy was

neither a products liability nor professional (errors and omissions) liability policy which reasonably might have been expected to provide extended coverage for liability based upon negligent conduct occurring during the policy period. This fact clearly serves to distinguish such cases as *Sylla* v. *United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38], and *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594], relied on by defendant herein.

In *Sylla,* the insured was engaged in automobile repair operations and was covered by a standard form garage owners liability policy which indemnified against loss "caused by an occurrence *and arising out of garage operations . . . .*" (Italics added.) As in the present case, the policy was cancelled after the vehicle repairs in question were made but before the accident occurred. The appellate court in *Sylla* held that the insured reasonably expected that the garage operations policy would afford coverage for negligent acts committed during the policy period. The *Sylla* court distinguished the subject policy from mere "basic vehicular liability insurance" where coverage is deemed limited to incidents occurring within the policy period: "However in garage owners liability coverage the situation is very different . . . . [¶] The purchaser of such coverage seeks protection against future liability resulting from his own negligence with respect to the sale and/or repair of the vehicle and is not otherwise concerned with the operation of the vehicle by another over whom he has no control. Thus in the case of the garage owner *the fundamental hazard is not a vehicular collision itself but rather the garage owner's negligence in respect to the vehicle while it is in his possession.*" (54 Cal.App.3d at pp. 899-900, italics added.) Thus, the court construed the term "occurrence" as sufficiently broad to include acts of negligence by the garage owner during the policy period. The majority by its holding herein converts a standard vehicular public liability policy into a type of garage owners liability coverage contrary to the reasonable expectations of both parties to the insurance contract.

Similarly, in *Oil Base, Inc.* v. *Continental Cas. Co., supra,* 271 Cal.App.2d 378, the court construed a *manufacturer's* liability policy covering "accidents" occurring in the United States as sufficiently broad to include a duty to defend a suit arising from a Venezuelan accident attributable to acts of negligent manufacture occurring in the United States. Once again, the court ruled that the insured could have reasonably expected a defense under such circumstances. (Pp. 388-389; see also *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d

1219] [attorney would reasonably expect malpractice coverage for acts occurring during the policy period].)

In contrast, the policy before us in the present case was a basic aircraft owners liability policy insuring the fundamental hazard of damage to the aircraft (with resulting damage to others) while the plane was in the owner's possession and control. In my view, it seems most improbable that the insured reasonably could be said to have expected that such a policy would have afforded coverage for an air crash occurring after it had sold the plane to a third person, had knowingly cancelled further coverage, and received a refund for its unused premium.

I would affirm the judgment.

Clark, J., and Manuel, J., concurred.