[No. A037398. First Dist., Div. Two. Feb. 22, 1989.]

TRAVELERS INSURANCE COMPANY, Plaintiff and Respondent,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, Defendant and Appellant.

COUNSEL

Clark J. Bernham, Susan T. Feldsted and Moore, Clifford, Wolfe, Larson & Trutner for Plaintiff and Respondent.

Andrew P. Sclar, David B. Paynter, Burton J. Francis, Ericksen, Arbuthnot, Paynter & Brown, Charles I. Eisner and Boornazian, Jensen & Garthe for Defendant and Appellant.

OPINION

BENSON, J.—This appeal raises the question of what acts or omissions trigger coverage under an attorney's errors and omissions policy where the attorney negligently drafted a will with adverse tax consequences to some of

the beneficiaries of an estate. The trial court, applying the general "occurrence" rule espoused by some appellate courts in certain situations, ruled that the negligent act must result in damages during the coverage period and, on that basis, held there was no coverage under the Travelers Insurance Company policy. We reverse the judgment.

The parties to this declaratory relief action are successive providers of errors and omissions insurance coverage issued to a San Francisco law firm. In June 1985, the parties each contributed $1 million toward settlement of a malpractice claim brought against their mutual insured.

Respondent Travelers brought the action seeking a declaration that appellant National Union Fire Insurance Company of Pittsburgh was obligated to contribute more than the $1 million it had already paid.

Based on a joint stipulation of facts, the parties each filed a motion for summary judgment. The trial court ruled in favor of Travelers on both motions finding its policy did not provide coverage for the underlying claim because there was no "occurrence" during the policy period. In a later ruling, the trial court also awarded Travelers prejudgment interest on the $1 million it had contributed toward the settlement at the rate of 7 percent per annum from the date of payment, June 29, 1982. The parties then entered into a stipulated judgment which reserved National Union's right to appeal. On appeal, National Union challenges both rulings.

A summary of the facts stipulated to by the parties is necessary to a discussion of the issues raised. Travelers issued errors and omission coverage to the insured law firm continuously from April 21, 1975, through January 1, 1979. The policy limits were $1 million per claim and $3 million aggregate. The joint stipulation provided the four Travelers policies were "occurrence" policies. The Travelers coverage clause provides in pertinent part: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured, . . . arising out of the performance of professional services for others in the insured's capacity as a lawyer . . . ." The trigger clause provides in pertinent part: "This policy applies only to acts or omissions committed anywhere in the world (a) during the policy period . . . ."

National Union provided errors and omissions coverage to the insured law firm from January 1, 1979, through January 1, 1982. The coverage was under a "claims made" policy form. National Union concedes the malpractice claim against the law firm was first made by the beneficiaries during the pendency of the National Union policy and concedes coverage under its

policy for payment of the beneficiaries' damages. National Union stipulated its policy limits of $2 million per claim were sufficient to cover the entire amount paid in settling the underlying claim.

In August 1977, an Oregon resident approached the insured law firm seeking estate planning assistance. On several occasions between September 1977 and December 1979, attorneys with the firm met with the client to discuss estate planning. On October 6, 1978, the attorney wrote the client, "[I]t would be possible for you, either by will or by a living trust, to create a marital deduction provision for [the client's wife] in which you leave her up to 50% of your gross estate, free of federal and state death or income taxes." On November 3, 1978 the attorney wrote the client a letter summarizing the provisions of his proposed will. He proposed that one-quarter of the estate go to the wife outright and one-quarter go to a trust which would qualify for a tax deduction under Internal Revenue Code section 2056 (b)(5). He also proposed that these marital deduction bequests not bear any portion of the death tax burden but rather that the wife receive one-half of the estimated $20 million gross estate. On December 14, 1978, the attorney wrote the client another letter explaining the provisions of the will and enclosing a copy of a proposed will for the client's review. Article IV for the proposed will provided for the two bequests to the client's wife as described in the November 3, 1978, letter. The letter explained that the gifts to the client's wife "will not bear any estate or inheritance tax." All of these events, spanning 17 months from August 1977 through December 14, 1978, transpired before the termination of the Travelers policy on January 1, 1979. Unfortunately, the advice given was erroneous because the State of Oregon did not recognize a death tax marital deduction.

The National Union policy became effective January 1, 1979. While this policy was in effect, on February 2, 1979, the client travelled to San Francisco where he signed the will prepared by the insured law firm. The client signed a codicil to the will on November 14, 1979. The codicil made no change to the article which relied on the nonexistent Oregon marital deduction to give the client's wife one-half the gross estate. On December 21, 1979, the insured sent a letter to the client enclosing a draft of a new will embodying a new estate plan. No further action was taken. The client died on January 5, 1980. As stated, Oregon law did not recognize the marital deduction and the beneficiaries of the will, other than the client's wife, were subject to significant estate taxes.

The trial court granted summary adjudication of issues in favor of Travelers ruling that "the 'occurrence' of legal malpractice by the insureds which gave rise to the damages for which payment was made, took place

after the termination of [Travelers] policy period on January 1, 1979." The trial court also denied National Union's motion for summary judgment in its favor.

On appeal, National Union argues the trial court erred in relying on an "occurrence" analysis of the Travelers policy which resulted in the court's belief that Travelers' coverage was limited to acts resulting in damage during the policy period. National Union explains that the trial court's reliance on *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal. App.3d 623 [127 Cal.Rptr. 681], is misplaced because by using an "occurrence" analysis the court read into the Travelers policy a limitation not present in the policy. The *Tijsseling* policy provided coverage for an "occurrence." The policy defined "occurrence" as " 'an accident . . . which results, during the policy period, in bodily injury or property damage . . . .' " The *Tijsseling* coverage expressly applied " 'only to bodily injury or property damage which occurs during the policy period. . . .' " (*Id.* at pp. 625-626.)

On the other hand, National Union argues, the instant Travelers policy provides coverage for "acts" or "omissions" committed during the coverage period. The word "occurrence" does not appear in the Travelers policy. National Union maintains, and we agree, that the trial court erred in applying a general "occurrence" rule rather than focusing on the particular language of the Travelers policy. (*Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029 [211 Cal.Rptr. 902].)

In *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216 [110 Cal.Rptr. 139, 514 P.2d 1219], the court had before it an errors and omissions policy issued to an attorney. The alleged malpractice was allowing the statute of limitations to run without filing a worker's compensation claim on behalf of a client. The court did not apply a general "occurrence" rule but instead looked to the wording of the policy which it found to be ambiguous. The court noted, "A lawyer's malpractice usually damages intangible property interests, and the occurrence dates of the negligence, the injury, and the discovery may vary." (*Id.* at p. 219.) The court found that the expectation of attorneys was that their insurance would cover them for negligent acts committed during the coverage period even though the claim was asserted after the coverage period. (*Id.* at p. 220.)

In *Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409 [149 Cal.Rptr. 292, 583 P.2d 1335], the court was asked to construe a liability and indemnity policy that covered the defendant's airplane and protected against liability for injury or destruction of the airplane " 'arising out of the . . . maintenance . . . of the aircraft.' " The defendant

sold his airplane, cancelled his insurance policy and received a refund for the balance of the policy period. The aircraft crashed and was destroyed while in possession of the new owner who sued the seller saying the crash was caused by the former owner's negligent maintenance of the aircraft. The trial court found no coverage relying on the rule that " 'the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged.' " (*Id.* at pp. 411-412.) The Supreme Court, however, reversed and held the rule relied upon by the trial court was not applicable to the case and, instead, proceeded to construe the words of the policy. (*Id.* at pp. 412-413.)

Under the facts of this case, we do not find the rule applicable. The Travelers policy does not use the word "occurrence." Contrary to Travelers's assertion, the coverage clause provides coverage for "all sums which the insured *shall* become legally obligated to pay as damages because of any act or omission of the insured," not just sums for which the insured becomes liable during the policy period. (Italics added.) Furthermore, application of the rule does not answer the controlling question in this case. ▉ ▉ The issue presented is whether erroneous advice alone is sufficient to constitute an "act or omission" so that coverage is triggered.

We agree with the reasoning of the court in *Harbor Ins. Co.* v. *Central National Ins. Co., supra,* 165 Cal.App.3d at pages 1034-1035, where the trial court had resolved the issue of coverage by applying a blanket rule for the timing of an "occurrence" of a malicious prosecution action. The reviewing court stated: "In so determining the matter, the court unnecessarily and overbroadly fashioned a general 'occurrence' rule of coverage, rather than focusing, as it should have, upon the particular language of the policies involved. Depending upon the wording of the particular policy, the significance and meaning of an 'occurrence' as regards the scope of policy coverage may vary widely. (Compare *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379] ('occurrence' defined as accident resulting in injury during the policy period; coverage commenced upon injury, not injury-producing act) with *Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409 [149 Cal.Rptr. 292, 583 P.2d 1335] ('occurrence' within policy period, covered but not defined; policy covered act within policy period producing injury after policy expiration).) A general rule as to the timing of 'the occurrence' hence may not be responsive to the particular question of a given policy's coverage. Indeed, in this case several of the policies in question did not even use the term 'occurrence' in defining their temporal scope of coverage for malicious prosecution. Accordingly, rather than continuing the unproduc-

tive pursuit of a rule governing all cases, we consider instead the language of the policies themselves." (*Ibid.*, fn. omitted.)

National Union argues that the stipulated facts show various acts giving rise to the claim prior to the expiration of Travelers' coverage period. During this period, the insured attorneys researched the law, analyzed the client's estate, repeatedly advised him concerning the marital deduction, and prepared and sent the will to the client. National Union asserts that in fact, no further acts of malpractice took place after the expiration of the Travelers policy. National Union relies on *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545 [230 Cal.Rptr. 792] ("act" includes negligent investigation and valuation of community property); *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835 [140 Cal.Rptr. 493] ("act" includes failure to review corporation's latest financial statement and drafting of an unenforceable stock redemption agreement); and *Arant* v. *Signal Ins. Co.* (1977) 67 Cal.App.3d 514 [136 Cal.Rptr. 689] ("act" is the giving of incorrect advice concerning the meaning of the terms of an employment agreement).

Travelers counters that the clear wording of its policy limits coverage to acts committed during the policy period which created legal liability of the insured to pay damages. Travelers characterizes the acts committed during its coverage period as acts of giving bad advice to the client. Bad advice, Travelers contends, does not cause damages. Travelers points to the act of signing of the will by the client as the first act which caused potential damages and notes the damages became actual only upon the death of the client. Travelers asserts California has adopted a rule that legal liability will be fixed upon the date the claimant is damaged. Travelers cites *Employers Reinsurance Corp.* v. *Phoenix Ins. Co., supra,* 186 Cal.App.3d 545; *Economy Lumber Co.* v. *Insurance Co. of North America* (1984) 157 Cal.App.3d 641 [204 Cal.Rptr. 135]; *Tijisseling* v. *General Acc. etc. Assur. Corp., supra,* 55 Cal.App.3d 623; *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379].) These cases, however, all involve occurrence policies which limit coverage to acts which cause damage during the policy period.

■ Where, as here, the trial court was asked to interpret a written contract based upon a stipulation of facts our review is *de novo*. The issue presented is one of law and the appellate court "must make its own independent determination of the meaning of the contract." (*Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1109 [234 Cal.Rptr. 853].) ■ "It is likewise axiomatic that an insurance policy is but a contract and that like all other contracts, it must be construed from the

language used; where, as here, its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties." (*Ibid.*, citations omitted.)

Our Supreme Court has set forth the principles used to interpret insurance policies. "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764]; citations omitted.) ▌ "When confronted with standardized provisions in a form insurance contract, the primary focus of our inquiry is on the reasonable expectations of the insured at the time he purchased the coverage. The ordinary expectation of one who purchases liability insurance is that he will be covered for any liabilities incurred as a result of the activity to which the policy relates. The insurance company's obligation to provide coverage can be limited only by exclusions phrased in language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." (*Id.* at p. 809.) In interpreting the Travelers policy, we must analyze it as if it were the only policy available to the insured. (*Pacific Indemnity Co.* v. *Imperial Casualty & Indemnity Co.* (1986) 176 Cal.App.3d 622, 627 [222 Cal.Rptr. 115].)

▌▌ Contrary to Travelers' assertion, its policy contains no wording suggesting its liability is limited to acts or omissions which cause damage during the coverage period. The only limitation contained in the policy is that the act or omission must be committed during the policy period.

In each of the cases relied on by National Union the attorney's malpractice took place during the policy period but the client suffered damage after the policy period. In *Arant* v. *Signal Ins. Co., supra,* 67 Cal.App.3d 514, the act found to constitute the attorney's malpractice was the giving of erroneous legal advice to the client that under an employment agreement drafted by the attorney, the client was entitled to royalties from his employer for its use of his invention. The advice was given prior to the time Signal issued its policy to the attorney but the client suffered damages of $130,000 during the period the attorney was insured by Signal when the attorney retracted his prior interpretation of the employment agreement. The court found no coverage for the prior acts of the attorney since the advice itself was the act causing damage and the advice had been rendered prior to the commencement of the Signal policy period.

In *Chamberlin* v. *Smith, supra,* 72 Cal.App.3d 835, the court found the negligent acts which triggered the coverage under an attorney's errors and

omissions policy were the failure to determine the corporation could not redeem all of the client's shares of stock in the corporation, the preparation of an invalid agreement and execution by the client of a negligently prepared stock redemption and purchase agreement. The agreement structured the sale of all of the shares of two principal shareholders to the remaining two principal shareholders by having the corporation redeem one-half the shares and the remaining shareholders purchase the other one-half. The contract was unenforceable because a new financial statement of the corporation showed the company did not have sufficient earned surplus to purchase the selling shareholders' shares. Later efforts of the remaining shareholders and the corporation to complete the purchase of the clients' shares failed. Then, while the attorney had errors and omissions insurance from a different carrier, the business filed a chapter 11 proceeding and the client and his wife suffered a $90,000 loss because they had been unable to enforce the agreement to have the corporation redeem all of their shares. The court found the negligent act occurred "on or before" the date the stock redemption and purchase agreement was executed by the client because after that date nothing could have been done to make the agreement valid or enforceable. (*Id.* at p. 841.)

National Union does not argue that the Travelers policy is ambiguous. We agree. The policy provides in plain, clear words that it provides coverage for "acts or omissions" committed during the policy period. We understand these words in their ordinary meaning. (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 807.) We hold that under the facts of this case, the giving of wrong tax advice during the Travelers policy period was an "act or omission" which triggered coverage under that policy.

National Union also contends the trial court erred in awarding Travelers prejudgment interest because "the amount of damages sought by Travelers was at all times in dispute and uncertain." Because we reverse the summary judgment entered by the trial court, this issue is now moot.

The order of the trial court granting summary judgment and the judgment thereafter entered are vacated. The matter is remanded to the trial court with directions that it enter an order granting the motion of National Union for adjudication of the issue of liability of Travelers in favor of

National Union and then to proceed to determine the allocation of the amounts to be paid by each insurer.

Kline, P. J., and Smith, J., concurred.