A. C. CRUISE LINE, INC.

v.

BOSTON REDEVELOPMENT
AUTHORITY et al.

v.

COMMERCIAL UNION ASSURANCE
COMPANY.

Civ. A. No. 78–2674–G.

United States District Court,
D. Massachusetts.

Aug. 18, 1981.

Bertram E. Snyder, Kisloff, Hoch, Flanagan & Snyder, Boston, Mass., for A.C. Cruise Line, Inc.

R. J. Corey, pro se., Arthur G. Coffey, Asst. Gen. Counsel, Boston, Mass., for Boston Redevelopment Authority.

Cornelius J. Sullivan, Nahant, Mass., Kenneth Gilman, Gilman, McLaughlin & Hanarahan, Boston, Mass., for Corey.

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON THIRD PARTY COMPLAINT

GARRITY, District Judge.

This matter is now before us on cross motions for summary judgment filed by third party plaintiff Corey Steeplejack Inc. (Corey) and third party defendant Commercial Union Assurance Company (Commercial Union) with respect to the third party complaint.[1] The primary action is an admiralty claim arising from the sinking of a vessel owned by plaintiff A.C. Cruise Line, Inc., on July 22, 1978, as the result of its

---

1. Plaintiff's principal claim is unaffected by these cross motions, which relate to the third party action only.

striking an unmarked submerged piling which was to have been cleared by Corey pursuant to a contract between Corey and Boston Redevelopment Authority. Corey later impleaded Commercial Union as third party defendant under F.R.C.P. 14(c), alleging that a General Liability Policy purchased by Corey in 1969 from Commercial Union's predecessor in interest obligates Commercial Union to defend Corey in the instant suit and to pay any sum that Corey may be ordered to pay to plaintiff.

The facts are not in dispute. In 1969, Corey entered into a demolition contract with the Boston Redevelopment Authority, under which Corey was to perform certain demolition work, including the cutting and removing of existing pilings. Employers Liability Assurance Corporation, Ltd., Commercial's predecessor in interest, issued, on July 25, 1969, a general liability policy to the Boston Redevelopment Authority, insuring Corey Steeplejack, Inc., for the performance of the demolition work. Although Corey concedes that it ceased making premium payments on or about July, 1972, after which it did no further demolition work, Corey argues that the "completed operations" coverage and the "underground property damage" coverage afforded by the policy remained in effect in 1978, when the plaintiff's ship allegedly struck submerged pilings which were to have been removed by Corey.

■ Under the plain terms of the policy, coverage is afforded only for damages caused by an "occurrence", that is "an accident which results, *during the policy period*, in bodily injury or property damage, neither

expected nor intended from the standpoint of the insured." (Emphasis added). According to the Certificate of Insurance, the policy period in this case extended from July 25, 1969 through July 25, 1972. Therefore, it would appear from the face of the policy that coverage had expired approximately six years prior to the occurrence which forms the basis of the plaintiff's complaint against Corey.

Corey argues, however, that the "completed operations" provision of the policy remained in effect after the expiration of the coverage afforded by the payment of the last premium. It argues that the "completed operations" provision is intended to provide coverage for liability for damages which arise out of but occur after the completion of operations, but that the wording of the provision is ambiguous with respect to when the damage must occur.[2] Since ambiguous terms are to be construed against the insurer, *MacArthur v. Massachusetts Hospital Serv., Inc.*, 1962, 343 Mass. 670, 672, 180 N.E.2d 449; *Schroeder v. Federal Ins. Co.*, 1962, 343 Mass. 472, 475, 179 N.E.2d 328, Corey argues that the policy should be construed to obligate Commercial Union to indemnify and defend Corey against liability for property damage occurring any time after the completion of operations.

We find no ambiguity in the terms of the policy. The courts which have considered the question have uniformly held that "completed operations" provisions identical to that involved here extend coverage only for the period during which premium pay-

2. The "completed operations" provision extends protection for damages arising from a "completed operations hazard", which is defined as follows:

"[C]ompleted operation hazard" includes bodily injury and property damage arising out of operations or of reliance upon a representation or warranty made at any time with respect thereto but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations

shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project. (Emphasis supplied).

ments are made. *Prieto v. Reserve Ins. Co.,* 1977, Fla.App., 340 So.2d 1282; *Travelers Ins. Co. v. C. J. Gayfer's & Co.,* 1979, Fla. App., 366 So.2d 1199; *Deodato v. Hartford Ins. Co.,* 1976, 143 N.J.Super. 396, 363 A.2d 361, affirmed, 154 N.J.Super. 263, 381 A.2d 354 (1977). This case is not distinguishable. "The definition of completed operations does not mislead; it is simply silent as to the period of coverage.... An insured would expect to find a time limitation expressed in the policy, and would not reasonably assume, after reading only the completed operations definition, that he could cease paying premiums but enjoy completed operations coverage indefinitely." *Travelers Ins. Co. v. C. J. Gayfer's & Co., supra* at 1201. And when the insured reads the entire policy, the definition of "occurrence" clearly advises the covered damage must occur "during the policy period".

Corey also argues that it is afforded coverage pursuant to the "underground property damage hazard" provision. That provision states as follows:

> "[U]nderground property damage hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. "Underground property damage" means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, and any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filing, back-filing or pile driving.

Damage to a ship grounded on piles which the insured allegedly failed to remove clearly does not fall within the definition of "underground property damage" covered by the policy.

We conclude that since there are no genuine issues of material fact and it is clear as a matter of law that the explicit policy terms do not cover damage sustained approximately six years after payment of the last premium, Commercial Union's motion for summary judgment should be granted and plaintiff's cross motion for summary judgment denied. So ordered (as to third party action only).