[No. E007002. Fourth Dist., Div. Two. Dec. 3, 1990.]

CITY OF LAGUNA BEACH, Plaintiff and Appellant, v. MEAD REINSURANCE CORPORATION, Defendant and Appellant.

COUNSEL

Rutan & Tucker, Philip D. Kohn and Jeffrey Wertheimer for Plaintiff and Appellant.

Wilson, Elser, Moskowitzk, Edelman & Dicker and Otis D. Wright II for Defendant and Appellant.

## OPINION

**TIMLIN, J.**—This case concerns an insurance coverage dispute between the City of Laguna Beach (hereinafter, the city) and one of its (if not its only) liability insurance carriers, Mead Reinsurance Corporation (hereinafter, Mead).[1] The dispute revolves around (a) compensation which the city paid in connection with flooding/landslide damages incurred by certain city residents in 1980 and (b) the city's legal action against Mead to obtain insurance reimbursement for those payments pursuant to the two comprehensive general liability indemnity policies issued by Mead. Mead appeals from a judgment on the pleadings entered by the trial court in the city's favor on the city's breach of contract and declaratory relief causes of action against Mead, while the city appeals from the trial court's determination that the city cannot recover (from Mead) the expenses it incurred as a result of earth stabilization measures it undertook in the landslide area.

We conclude that the judgment entered below must be reversed insofar as it upholds the city's claims against Mead under the insurance policies here in issue, but that the judgment should be affirmed insofar as it denies the city recompense for its earth stabilization measures.

### FACTS

Effective on August 1, 1979, the city was issued two liability insurance policies by Mead. Policy number GLA-1007 provided primary liability coverage for various types of liability, including property damage liability, arising from events occurring within the policy period of August 1, 1979, through August 1, 1982. The coverage limits of policy number GLA-1007 extended from $100,000 to $500,000, the first $100,000 of liability exposure falling within the city's self-insured retention. Policy number UMB-1039 provided excess (umbrella) liability coverage for various types of liability, including property damage liability, arising from events occurring within the same policy period of August 1, 1979 through August 1, 1982. The

---

[1] The cover sheets of the appellate briefs filed by Mead seemed to suggest that both Mead and its claims agent, Patricia Fleischman, Inc., were appearing before us on appeal. However, a review both of the judgment entered by the trial court below and of the notices of appeal filed in this matter reveals that Patricia Fleischman, Inc. is not a party to any of the appeals perfected in this case. Mead has acknowledged as much in its "Reply and Cross-Respondent's Brief."

coverage limits of policy number UMB-1039 extended from $500,000 to $5 million.

Insofar as the within litigation is concerned, the pertinent provisions of the two policies are set forth below:[2]

(1) *Policy number GLA-1007*:

"The 'company' will indemnify the insured for ultimate loss in excess of the retained limit hereinafter stated which the insured shall become legally obligated to pay by reason of liability imposed by law, . . . for damages because of . . . property damage . . . to which this policy applies, caused by an occurrence which takes place during the policy period.

"This policy does not apply: To any liability arising out of or in any way connected with the operation of the principles of eminant [*sic*] domain, condemnation proceedings, or inverse condemnation, by whatever name called, whether such liability accrues directly against the insured or by virtue of any agreement entered into by or on behalf of the insured.

"[I]t is agreed that the insurance afforded by the policy shall not apply to any liability actually or allegedly arising out of or caused or contributed to by or in any way connected with any principle of eminant [*sic*] domain, condemnation proceeding, inverse condemnation, dedication by adverse use or adverse possession, by whatever name called."

(2) *Policy number UMB-1039*:

"The Company agrees to indemnify the Insured for all sums which the Insured shall become legally obligated to pay as damages, for ultimate net loss in excess of the Insured's primary limit, by reason of liability . . . imposed upon the Insured by law . . . because of . . . property damage . . . caused by an occurrence anywhere in the world.

"However, this Policy shall be no broader than that of the underlying insurance.

"[I]t is agreed that the insurance afforded by the policy shall further not apply to any liability . . . arising out of or in anyway [*sic*] connected with

---

[2] These various provisions do not appear in conjunction with each other in the two policies. In this opinion, however, we have "collected and collated" the relevant portions of the policies for ease of understanding. Further, we have set forth these policy provisions in a standard typeset format. In point of fact, the majority of these provisions (including, in particular, the exclusion provisions) were set forth in the policies in an "all cap" typeset format.

the operation of the principles of eminant [*sic*] domain, condemnation proceedings, or inverse condemnation, by whatever name called, whether such liability accrues directly against the insured by virtue of any agreement entered into by or on behalf of the insured."

On February 17, 1980, within the policy period of both of the above insurance policies, heavy rains initiated a localized landslide on Del Mar Avenue in the city. This landslide caused considerable damage to the Mallegg residence and even greater damage to the McArthur residence. Faced with the threat of further landslide activity, the city retained various geotechnicians to stabilize and reconstruct the hillside area where the landslide had occurred. The city expended approximately $830,000 on these remedial measures.

The Malleggs and the McArthurs sought to recover for their damages by filing claims against the city pursuant to the requirements of the California Government Tort Claims Act. (See Gov. Code, § 900 et seq.) The city denied the claims, and the Malleggs and McArthurs responded by filing suit against the city. Both of the lawsuits alleged causes of action for negligence, dangerous condition of public property as a result of government employee negligence, dangerous condition of public property of which city had notice, removal of lateral support and inverse condemnation. The two lawsuits were consolidated for trial purposes and thereafter went to trial before a jury on all of the asserted causes of action. As was explained to the jury by the trial court, the liability issues presented by the two lawsuits were identical—the only difference between the two actions being the difference in the amount of damages being sought.

Just before the two actions were submitted to the jury for deliberation, trial counsel for the Malleggs and the McArthurs made a tactical decision to voluntarily dismiss all of the various causes of action except for the one for inverse condemnation. Thus, the only liability issue which was submitted to the jury was that of inverse condemnation. Following its deliberations, the jury returned a verdict in favor of the Malleggs and McArthurs and against the city on the liability issue of inverse condemnation. The jury awarded $27,600 in damages to the Malleggs and $512,000 in damages to the McArthurs. The trial court then calculated certain supplementary entitlements due the Malleggs and McArthurs and entered judgment in favor of the Malleggs in the sum of $49,420.50 and in favor of the McArthurs in the sum of $771,100.53. The city appealed from these judgments.

While its appeal was pending, the city entered into settlement negotiations with both the Malleggs and the McArthurs. The city managed to settle the Mallegg lawsuit by paying the Malleggs $47,000 and abandoning

its appeal. The Malleggs executed and filed an acknowledgment of a full satisfaction of their judgment against the city. The city also managed to settle the McArthur lawsuit, but on somewhat more complicated terms: (1) The city and the McArthurs stipulated that the judgment obtained by the McArthurs would be vacated and set aside, which stipulation was ordered into effect by the trial court; (2) the McArthurs filed a request that their action against the city be dismissed with prejudice; and (3) the city paid the McArthurs $653,000.

Throughout the progress of all of the above, the city had kept Mead apprised of the various developments in the litigation. Indeed, the city at one point offered to simply pay Mead the remaining balance of its (the city's) self-insured retention and turn the entire matter over to Mead. Mead steadfastly refused to become involved in the situation. Following its settlement of the Mallegg and McArthur lawsuits, the city made formal demand on Mead for indemnification of its payments to the Malleggs and McArthurs as well as its costs, including its earth stabilization costs. Mead denied coverage based on the inverse condemnation exclusion clause found in both of the insurance policies. The within lawsuit followed. As amended, the city's action against Mead asserted five causes of action: Bad faith (tortious breach of duty of fair dealing and good faith), breach of contract, breach of fiduciary duty, breach of statutory duty, and declaratory relief.

Before the matter went to trial, both the city and Mead submitted numerous motions *in limine* to the trial court. Insofar as the trial court's rulings on those motions are relevant to this appeal, the trial court ruled: (1) That the inverse condemnation exclusion clauses here at issue were invalid; (2) that the city could introduce evidence at trial of its own negligent acts respecting the 1980 landslide situation so as to show that inverse condemnation need not have been the only ground of recovery for the Malleggs and the McArthurs; and (3) that the insurance policies in question do not provide coverage for the city's earth stabilization costs.

Faced with the fact that the trial court's rulings on the motions *in limine* had deprived it of its sole defense on the breach of contract cause of action, Mead entered into an agreement with the city so as to expedite matters for appeal. The city and Mead agreed: (1) To stipulate to the trial court's dismissal of all of the city's causes of action, except those for breach of contract and declaratory relief, without prejudice under section 581, subdivision (e), of the Code of Civil Procedure; (2) that Mead would waive all statute of limitations defenses and other procedural bars to the reinstitution of the dismissed causes of action; and (3) to stipulate to the trial court's entry of a judgment on the pleadings on the breach of contract and declaratory relief causes of action—which judgment would be in favor of the city

on the breach of contract and declaratory relief causes of action with respect to indemnification for the payments made to the Malleggs and the McArthurs, but adverse to the city with respect to indemnification for expenditures made to stabilize the landslide area. The terms of the agreement were thereafter fully carried out by the parties and the trial court.

Both parties have appealed from the judgment on the pleadings entered below pursuant to stipulation. Mead contends: (1) That the trial court erred in determining that the inverse condemnation exclusion clauses were invalid; (2) that the trial court erred in ruling that the city could present evidence of its own negligence in dealing with the 1980 landslide situation in the trial against Mead; and (3) that the trial court erred in awarding the city attorney fees in the within action. The city contends that the trial court erred in determining that Mead owed no obligation to the city to indemnify it (the city) for its earth stabilization expenses.

We conclude that the trial court did err in determining that the inverse condemnation exclusion clauses here in issue were invalid—and that this determination on our part is dispositive of all of Mead's contentions. Further, we conclude that the trial court was correct in determining that Mead owes no obligation to the city to indemnify it for its earth stabilization expenses.

Additional facts will be referred to, as needed, in the discussion which follows.

## DISCUSSION

### I.

#### VALIDITY OF INVERSE CONDEMNATION EXCLUSION CLAUSES

The city has focused a great deal of its effort in this court, as it did in the trial court, on articulating the position that the scope of an insurer's contractual obligation to an insured under a general comprehensive liability policy should be measured by the underlying, contextual *facts* giving rise to the allegedly insured-against loss rather than by the artful wording used by a third party (usually in a complaint) to describe various theories of recovery arising from those facts. In support of this position, the city quotes heavily from the seminal case *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]. From this position, the city goes on to argue that the facts of this case are such that a trier of fact *could*

have found the city liable to the Malleggs and the McArthurs on a theory of negligence or on a theory of dangerous condition of public property and that that possibility triggered Mead's indemnification obligations—whether or not the trier of fact *actually* found the city liable to the Malleggs and the McArthurs on a theory of inverse condemnation. The city's reliance on *Gray* v. *Zurich Insurance Co.* is misplaced. We have no quarrel with the principles set forth and explained in *Gray* v. *Zurich Insurance Co.*—indeed, those principles are among the cornerstones of modern insurance law—we simply find that those principles have no application to the case before us. In this case, the city's dispute with Mead regards the insurer's "duty to *indemnify*." In *Gray*, on the other hand, the court was concerned solely with an insurer's "duty to *defend*"—and *Gray* itself recognizes that the duty to defend is much broader than the duty to indemnify: "We point out that the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy; . . ." (*Gray*, at p. 275.) Having disposed of that which is not applicable, we now turn to that which is.

■ The starting point for determining the extent of coverage provided an insured is "the particular language of the policies involved." (*Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1034 [211 Cal.Rptr. 902]; accord, *Travelers Ins. Co.* v. *National Union Fire Ins. Co.* (1989) 207 Cal.App.3d 1390, 1396-1397 [255 Cal.Rptr. 727].) ■ In reviewing the policy language in question, we are not concerned with the interpretations which have been given that language by the trial court: "Where [as in this case] the underlying facts are not disputed, construction of an insurance policy presents a question of law. The appellate court is not bound by the trial court's interpretation. Rather it must independently interpret the language of the insurance contract. [Citation.]" (*Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 45 [261 Cal.Rptr. 273].) ■ Finally: "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Reserve Ins. Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].)

■ The language in policies GLA-1007 and UMB-1039 is clear and unambiguous, both with respect to the extent of coverage provided and with respect to the exclusions to that coverage.[3] The policies provide coverage

---

[3] The city has suggested that we should impliedly read the word "intentional" into the exclusion clauses here in question so as to create a distinction between "intentional acts of inverse condemnation" and "negligent acts of inverse condemnation." No reason exists in law or logic to support such a reading of the policies' language. Indeed, it is just such "semantic

for: (1) loss; (2) which the insured is legally obligated to pay by reason of a *liability* imposed by law (not by reason of the factual nature of the loss or by reason of the theories of recovery put forward by third parties against the insured); (3) for damages; (4) because of property damage to which the policy applies; (5) caused by an occurrence taking place within the policy period. At a minimum, then, the policies only apply to losses for which the insured is liable for payment by operation of law (as either judicially or legislatively declared). The exclusion here in question is equally certain and clear: The policy does *not* provide coverage for liabilities arising out of an application of the principles of inverse condemnation. This exclusion indisputably applies to the city's liability to the Malleggs and the McArthurs in this case—inverse condemnation is the *only* basis on which a liability imposed by operation of law and running from the city to the Malleggs and McArthurs rests.

█ The city has attempted to fashion an argument that the basis of its liability to the McArthurs is still unsettled and that, consequently, Mead cannot insist on the application of the inverse condemnation exclusion clause. The city has cited two cases as authority for its position: *Lamb v. Belt Casualty Co.* (1935) 3 Cal.App.2d 624 [40 P.2d 311] and *Estate of Edwards* (1972) 25 Cal.App.3d 906 [102 Cal.Rptr. 216]. A careful reading of these cases, however, discloses that they do not serve as authority for the city's position.

The city relies on the following statement in *Lamb*: "[Where] a settlement of the litigation has been made, the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated and determined in the action brought by the insured to recover the amount so paid in settlement." (*Lamb, supra,* 3 Cal.App.2d at p. 631.) The city's reliance is misplaced for two reasons: (1) The *Lamb* opinion expressly acknowledges that this statement is pure dicta in the context of the facts of that case; and, more importantly, (2) the relied-upon statement is prefaced with the qualification "*where there is no trial and no judgment establishing the liability of the insured.*" In this case, there was both a trial (fully and vigorously testing the allegations of inverse condemnation) and a judgment—a judgment entered on a jury verdict firmly fixing the city's liability for the landslide damage under a theory of inverse condemnation.

The city relies on the following statement in *Edwards*: "When an order or judgment is vacated the previously existing status is restored and the situa-

shenanigans" that our Supreme Court disparaged in the passage from *Reserve Ins. Co.* v. *Pisciotta* we quoted in the main text of this opinion.

tion is the same as though the order or judgment had never been made. The matters in controversy are left open for future determination." (*Edwards, supra,* 3 Cal.App.3d at p. 912, citations and internal quotations omitted.) The city takes this statement in *Edwards* to mean that the vacating of a judgment renders the *entire* matter null and void. *Edwards* itself, however, stands in contravention to the city's position. In *Edwards*, the vacating of a final decree of divorce was deemed to have left intact an interlocutory decree of divorce. By analogy, the vacating of the judgment in the McArthur case left intact the jury verdict finding the city liable under a theory of inverse condemnation for the damage to the McArthur residence. In short, inasmuch as the McArthur jury verdict remained in effect, there were no "matters in controversy left open for future determination" in the McArthur case.

The underlying gist of the city's argument is the fact that there is no final judgment fixing legal liability extant in the McArthur case.[4] The city's argument is unavailing for two distinct reasons. First, it fails to take the Mallegg judgment into consideration. The Mallegg judgment *is* a final judgment imposing liability on the city for the 1980 landslide under a theory (and only under a theory) of inverse condemnation after the issue was fully and vigorously litigated by the city. This judgment would operate to at least collaterally estop the city from ever denying any such liability as against a claim by the McArthurs concerning the same landslide. Second, the decision by McArthurs' counsel to voluntarily dismiss all causes of action other than that for inverse condemnation prior to submitting the matter to the jury operated as a dismissal of those other causes of action *with prejudice*. (Code Civ. Proc., § 581, subd. (e)—and, arguably, subd. (d).) This dismissal was "doubled" in effect by the McArthurs' subsequent request (as a part of their settlement agreement with the city) that their entire action be dismissed with prejudice. There is virtually *no* chance that the city will ever be beset by a liability *imposed by law* (or, for that matter, by any other means) to pay the McArthurs for their 1980 landslide damages.

The trial court erred in determining that the inverse condemnation exclusion clauses in policy number GLA-1007 and policy number UMB-1039 were invalid.

---

[4] The city understandably avoids focusing on the fact that this procedural state of affairs is solely attributable to the peculiar settlement agreement entered into by the city and the McArthurs. Without pursuing the matter further, we simply note that the implied obligation to act in good faith and with fair dealing which exists in all contracts is a *mutual* obligation—and that the only possible explanation for this settlement agreement that suggests itself to us is a desire on the part of the city to first create and then impose an indemnification obligation on Mead that would not otherwise have arisen under the facts surrounding this entire episode.

## II.

### Remaining Issues Raised by Mead

The remaining issues raised by Mead on appeal require no extended discussion.

The question as to whether the city is entitled to introduce evidence of its own negligence in its suit against Mead in order to establish an indemnified loss to Mallegg and/or McArthur is moot in light of our above determination that the city has suffered no indemnified loss to the Malleggs and/or McArthurs under policy number GLA-1007 or policy number UMB-1039.

The trial court's award of attorney fees to the city must, naturally, fall with our reversal of the trial court's judgment in the city's favor.[5]

## III.

### The City's Cross-appeal

Finally, we turn to the city's cross-appeal and to its argument that it is entitled to receive "mitigation expenses" from Mead for the expenses it (the city) incurred—after the Mallegg and McArthur properties were damaged—in stabilizing the hillside where the landslide occurred. We conclude that this argument by the city must also fail.

■ The city has accurately cited authority for the general proposition that an insured can recover from an insurer costs incurred by the insured for the primary benefit of the insurer to mitigate against the further occurrence of an insured loss. Such authority does not, however, assist the city on its cross-appeal. Necessary to a recovery of "mitigation costs" is the existence of *an insured loss*. In the context of this case, as we discussed above, the requirement of the existence of an insured loss means that the mitigation expenses incurred by the city must have been spent to mitigate property damage for which the city bore a liability imposed (either judicially or legislatively) by law. No such damage was mitigated in this instance. There is no showing that any property damage had yet occurred on the hillside when it was stabilized by the city and, thus, there is no showing that the city

---

[5] We do note that the two grounds on which Mead has taken the position that the trial court's award of attorney fees to the city was error—(1) that the adjudged breach of the insurance contract was, in any event, not tortious; and (2) that the city, as the insured, may not recover attorney fees as an element of damages in an action against its insurer to enforce a right under the terms of the policy—appear meritorious.

bore any liability imposed by law for property damage occurring on that hillside.

In a very recent case, our Supreme Court had occasion to exhaustively review the general principles applicable to the recovery of "mitigation costs" under standardized comprehensive general liability policies. (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807 [274 Cal.Rptr. 820, 799 P.2d 1253].) Although in that case the Supreme Court was addressing the general issue in the context of a toxic waste cleanup cost recovery dispute, the overall principles enunciated in that opinion have far broader application. Of particular interest in this case, the Supreme Court noted in the last full paragraph immediately preceding the conclusion section of that opinion that: "We do agree that prophylactic costs—*incurred to pay for measures taken in advance of any [actual property damage]*—are not incurred 'because of property damage.' [Citations.] Until such damage has occurred, whether on the [site of the threatened damage] itself or elsewhere, *there can be no coverage under CGL* [comprehensive general liability] *policies.*" (51 Cal.3d at p. 843.) (Italics added.)

In this case, the city voluntarily incurred "prophylactic costs" for which it cannot recover from Mead under the provisions of the insurance contracts in question.[6]

## DISPOSITION

The judgment is affirmed insofar as it denies recovery to the city for its mitigation costs incurred in stabilizing the hillside on which the landslide occurred. In all other respects, the judgment is reversed. Appellant Mead shall have its costs on appeal.

Hollenhorst, Acting P. J., and Dabney, J., concurred.

A petition for a rehearing was denied December 31, 1990, and the petition of appellant City of Laguna Beach for review by the Supreme Court was denied February 27, 1991.

---

[6] There is another reason that supports the trial court's determination to deny the city recovery of mitigation expenses. Before such expenses can be recovered from an insurer, those expenses must have been incurred for the primary benefit of the insurer. (See *Southern California Edison Co.* v. *Harbor Insurance Co.* (1978) 83 Cal.App.3d 747, 759 [148 Cal.Rptr. 106].) In this case, the fact that the city faced a potentially nonindemnified exposure for liability under a theory of inverse condemnation with respect to the other residences situated on or near the subject hillside rendered the city's mitigation measures at least equally beneficial to the city as to Mead.