42 F.3d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LEGAL SERVICES CORPORATION, Plaintiff/Appellant,
v.
CONTINENTAL INSURANCE COMPANY, Defendant/Appellee.
 Nos. 93-15326, 93-15526.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 16, 1994.*
Decided Dec. 7, 1994.
 
 1
 Before: FARRIS and BEEZER, Circuit Judges, and MUECKE, District Court Judge**
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Legal Services Corporation ("LSC") appeals the United States District Court's decision granting partial summary judgment in favor of appellee Continental Insurance Company's and denying appellant's motion for summary judgment based on the conclusion that the underlying action was not an action for damages as defined in the policy and therefore not covered by the policy. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 LSC brought this lawsuit alleging coverage and a duty to defend in an underlying declaratory and injunctive relief action for invasion of privacy.
 
 
 5
 LSC is a private, nonprofit corporation established and funded by Congress pursuant to the Legal Services Corporation Act. 42 U.S.C. Secs. 2996, et seq. LSC distributes grants to hundreds of legal services programs. One of the largest of the programs is California Rural Legal Assistance, Inc. ("CRLA"). LSC monitors how its grantees spend the taxpayers' money, including periodic monitoring visits of its grantees. 42 U.S.C. Sec. 2996f(d).
 
 
 6
 LSC bought insurance coverage from Continental Insurance Company ("Continental") covering personal injury litigation, including invasion of privacy. In February, 1991, three unions representing employees of CRLA sued LSC over its right of access to personnel records and other files. The unions alleged that LSC's Employment Verification and Accounting ("EVA") file system invaded the privacy rights of CRLA employees by requiring the compilation and maintenance of confidential personnel information. (Lawyers Union of Rural California, el al. v. LSC, et al., No. C-91-0442-MHP).
 
 
 7
 On February 28, 1991, LSC tendered to Continental the union's complaint requesting that Continental provide a defense. On June 24, 1991, CRLA, a co-defendant in the lawsuit, filed cross-claims against LSC, seeking indemnity from LSC if CRLA was found liable for damages to the unions. On August 8, 1991, LSC tendered the CRLA cross claims requesting that Continental provide a defense.
 
 
 8
 Continental rejected the tender of defense. Thereafter, on January 31, 1992, LSC filed for declaratory relief and other claims. The district court granted Continental's motion for partial summary judgment and denied LSC's motion for summary judgment. Pursuant to a stipulation of the parties, the district court dismissed LSC's remaining claims, and this appeal followed.
 
 I.
 
 9
 A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937 (9th Cir.1992); T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 629 (9th Cir.1987). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 10
 We must determine whether the district court erred in finding that Continental is entitled to summary judgment as a matter of law. We affirm.
 
 II.
 
 11
 Stripped to the essential argument, the issue in this appeal is whether the district court erred in concluding that LSC had alleged no facts in the underlying complaint and the supporting papers that would trigger coverage and a duty to defend under the applicable policies. For a duty to defend to exist under the policies, LSC must show that damages were incurred.
 
 
 12
 LSC purchased six insurance policies with Continental; three primary policies with Comprehensive General Liability ("GCL") sections, and three umbrella policies, covering the period September 30, 1988 through September 30, 1991.
 
 The primary policies state:
 
 13
 We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury.
 
 
 14
 The primary policies define the term "personal injury" as:
 
 
 15
 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:
 
 
 16
 A. False arrest, detention or imprisonment;
 
 
 17
 B. Malicious prosecution;
 
 
 18
 C. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
 
 
 19
 D. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
 
 
 20
 E. Oral or written publication of material that violates a person's right of privacy.
 
 The umbrella policies provide that:
 
 21
 The Company will pay on behalf of the 'insured' the 'ultimate net loss' ... which the 'insured' is legally obligated to pay by reason of liability imposed by law, or assumed under contract, for damages on account of: ... 'personal injury' or 'advertising injury' ... to which this insurance applies, caused by an 'occurrence' during the 'policy period.'
 
 
 22
 The umbrella policies define 'personal injury' as:
 
 
 23
 'Personal injury' wherever used herein means, except in connection with advertising activities arising out of bodily injury, injury (including mental injury, mental anguish, shock and humiliation) arising out of false arrest, detention or imprisonment, wrongful eviction or wrongful entry, malicious prosecution, libel, slander, or defamation of character, invasion of rights of privacy, discrimination where insurance in connection therewith is not prohibited or held violative by law or public policy, by legislation, court decisions or administrative ruling.
 
 
 24
 The umbrella policies define "occurrence" as either the offense that results in personal injury or the ultimate net loss that arises out of advertising injuries. "Ultimate net loss" is defined as:
 
 
 25
 The sum actually paid or payable in cash in the settlement or satisfaction of losses resulting from civil proceedings for which the 'insured' is liable either by adjudication or compromise with the written consent of the Company, including damages for care and loss of services and loss of use of tangible property, after making proper deduction for all recoveries and salvages collectible.
 
 A. Duty to Defend
 
 26
 In a declaratory relief action concerning the coverage provided by an insurance policy, the insured has the burden of proving that the loss falls within the policy's coverage. Merced Mutual Ins. Co. v. Mendez, 213 Cal.App.3d 41, 261 Cal.Rptr. 273 (1989). The insured must show that the underlying claim is of the nature and kind covered by the policy. Gray v. Zurich Ins. Co., 419 P.2d 168, 175 (Cal.1966). If shown, the insurer must then show that the claim falls within an exclusion. Merced Mutual Ins. Co., 213 Cal.App.3d at 47; Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792 (Cal.1993).
 
 
 27
 A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. CNA Casualty v. Seaboard Surety Co., 176 Cal.App.3d 598, 222 Cal.Rptr 276 (1986). A duty to defend is broader than the duty to indemnify. Gray, 419 P.2d at 178. Any doubt about the duty to defend must be resolved in favor of the insured. CNA Casualty, 176 Cal.App.3d at 607.
 
 
 28
 An insurance carrier must defend a lawsuit which potentially seeks damages within the coverage of the policy. Gray, 419 P.2d at 176. A duty to defend is determined by comparing the allegations of the complaint with the terms of the policy to determine if a possibility that the claim may be covered by the policy. Id. The duty to defend is assessed at the outset of the case. Id. at 175-77.
 
 
 29
 LSC argues that the underlying action for invasion of privacy, which is a covered risk, places LSC at risk of liability for damages, including attorneys' fees and costs. Continental argues that the underlying action does not seek recovery covered under the policy because there are no damages.
 
 
 30
 LSC further argues that the issue is not whether the unions seek damages but whether the district court has the power to award damages. Therefore, LSC argues that even if the basis for a claim for damages for invasion of privacy is meritless or frivolous, it still is enough to trigger the duty to defend.
 
 B. Complaint and Extrinsic Evidence
 
 31
 An insurer's duty to defend is not determined by the facts in the complaint alone. Gray, 419 P.2d at 175-77. The insurer must also furnish a defense when it learns of facts from any source that create the potential of liability under the policy. Id. A court examines whether the facts in the lawsuit give rise to a potential of liability under the policy. CNA Casualty, 222 Cal.Rptr. at 280.
 
 
 32
 The first amended complaint seeks injunctive and declaratory relief, attorneys' fees and costs and such other and further relief as the court may deem just and proper, but does not include a prayer for damages. Thus, the duty to defend is determined by examining whether the potential for liability existed in any of the facts alleged.
 
 
 33
 The district court correctly considered all the evidence provided in the record, including facts outside the complaint, available at the time. The district court found "no facts in the underlying complaint and the supporting papers that trigger coverage and a duty to defend under the applicable policies." The district court did not err in finding that the first amended complaint and extrinsic information, such as the facts submitted with the motions for summary judgment, are barren of allegations or requests for relief that would support an award of damages.[1]
 
 C. The Privacy Act
 
 34
 In the underlying action, the unions allege that LSC has violated the Federal Privacy Act. 5 U.S.C. Sec. 552a. Under the Privacy Act, if the claimant can show that the agency's failure to comply with the provisions of the Act has had "an adverse effect" on him or her, the claimant may bring a civil action in a district court. 5 U.S.C. Sec. 552a(g)(1)(D). LSC incorrectly argues that in this lawsuit the district court could award damages for an alleged violation of the Privacy Act even in the absence of a formal prayer for such damages. See Nagel v. United States Dept. of Health, Educ. and Welfare, 725 F.2d 1438 (D.C.Cir.1984); Thomas v. Appalachian Ins. Co., 335 So.2d 789 (La.Ct.App.1976); Doyle v. Allstate Ins. Co., 154 N.Y.S.2d 10, 136 N.E.2d 484 (1956). These cases do not refer to the Federal Privacy Act and are not persuasive.
 
 
 35
 A claim for damages in this lawsuit could not be made under the Privacy Act, 5 U.S.C. Sec. 552a(g)(4), because actual damages have not been alleged in the underlying action. See Fitzpatrick v. Internal Revenue Serv., 665 F.2d 327, 331 (11th Cir.1982). LSC incorrectly argues that in invasion of privacy cases, damages are presumed.
 
 
 36
 The union has never amended its complaint to include any actual damages under Sec. 552a(g)(4), so the district court did not err in determining that it could not entertain those claims. Neither are requests for attorneys' fees under the Federal Privacy Act a form of damages. The award of attorneys' fees under the Privacy Act is discretionary rather than presumptive. Lovell v. Alderete, 630 F.2d 428, 430 (5th Cir.1980).
 
 D. California Privacy Laws
 
 37
 The unions also allege that LSC's conduct in maintaining confidential records violates California privacy laws, and that the District Court erred in not considering California law. Article I, section 1 of the California Constitution provides:
 
 
 38
 All people are by nature free and independent and have inalienable rights. Among these are ... pursuing and obtaining ... privacy.
 
 
 39
 This provision is in addition to the California common law of privacy. Porten v. University of San Francisco, 64 Cal.App.3d 825, 829, 134 Cal.Rptr. 839 (1976).
 
 
 40
 LSC argues that it is not necessary to allege disclosure of confidential information to state a claim for damages under California privacy law, but, rather, a court must consider what relief is awardable, not just what relief is sought. LSC argues that the duty to defend is triggered as long as there is any allegation that could potentially form the basis for a covered claim.
 
 
 41
 Pursuant to an agreement, CRLA agreed to maintain and allow LSC access to such personnel information as job descriptions, resumes, and performance evaluations. LSC seeks to enforce a binding arbitration agreement and prevent the alleged threatened invasion of privacy.
 
 
 42
 LSC alleges that the invasion of privacy threat in the underlying action has become injurious, and CRLA's employees can bring claims for damages. However, except for one alleged incident, no CRLA personnel information was turned over to LSC. In that alleged incident, summarized resumes, and redacted resumes, were furnished to LSC.
 
 
 43
 The district court does not err in finding that coverage under California law did not exist in this case. There are no allegations and no evidence that plaintiffs have suffered damages under California law.
 
 E. Injunctive Relief
 
 44
 An injunction looks to the future conduct of the parties and is preventive in nature. Claims seeking relief in the form of injunctions or restraining orders do not create a duty to defend under a policy that limits coverage to claims for damages. City of Laguna Beach v. Mead Reinsurance Corp., 226 Cal.App.3d 822, 276 Cal.Rptr. 438 (1990).
 
 
 45
 LSC argues that the unions' complaint triggers the duty to defend because its prayer for injunctive relief could constitute damages under the California Supreme Court's holding in AIU Ins. Co. v. Superior Court, 799 P.2d 1253 (Cal.1990). This court declines to apply AIU to this case. AIU was a CERCLA action. The AIU court found that the injunction required cleanup that could result in the insured spending sums of money, so it was a reasonable interpretation that the insured would be obligated to pay actual costs in the clean up. 799 P.2d at 1266, n. 10. The court reasoned that the term "damages" includes remunerative payment, compensatory damages, restitutive and punitive measures. 799 P.2d at 1267. However, all the definitions of damages require compensation in money for a loss or detriment. Id. LSC has not shown how the claim for injunctive relief asserted against it could constitute damages amounting to compensation in money for loss or detriment.
 
 
 46
 Even considering extrinsic evidence, the district court did not err in concluding that there was no request for any type of compensatory, economic, or restitutionary relief. Rather, the only request is for a temporary restraining order, a preliminary injunction, a judgment confirming the arbitration award, declaratory relief, and attorneys' fees and costs.
 
 F. Damages
 
 47
 The district court found that the unions had brought suit against defendant LSC to prevent the release of information contained in employee personnel files, and, if successful, an injunction would prevent any injury. Thus, the underlying complaint seeks to prevent future invasion of privacy and not to obtain a recovery of damages for actual injuries already incurred. There is no evidence within the complaint or extrinsic to the complaint to indicate that plaintiffs have actually suffered damage as a result of any invasion of privacy.
 
 
 48
 Merely requesting further relief as the court deems just and proper is insufficient to require a duty to defend. Where an action does not seek compensation for injuries suffered, the action does not seek damages as required under a general liability policy.
 
 
 49
 Neither was the District Court in error in relying upon Giddings v. Industrial Indemn., 112 Cal.App.3d 213, 169 Cal.Rptr. 278 (1980). The district court relied upon Giddings for the doctrine that an insurer is not obligated to defend its insured "where the basis for claiming potential liability is ... tenuous and farfetched." Giddings, 112 Cal.App.3d at 220.
 
 
 50
 LSC argues that even if the unions' allegations of invasion of privacy are meritless, even if their prospects of actually winning an award of damages in the underlying case are "tenuous and farfetched," the duty to defend arises for any possibility of a covered claim. We find that the insured may not rely upon speculation to manufacture a duty to defend.
 
 
 51
 We do not read the first amended complaint and supporting papers as alleging any damages and, therefore, the evidence in the record supports the trial court's finding. The district court did not improperly weigh the evidence of disclosure with the other extrinsic facts.
 
 
 52
 Although LSC relies heavily on Gray v. Zurich Ins. Co., this case differs. Under Gray, the damage of the type covered by the policy had indisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting that it was not obligated to defend its insured. In the present lawsuit, no facts before the district court warrant a conclusion that there was potential liability for losses under the policy. No allegations in the complaint, or extrinsic to the complaint, give rise to potential liability under the policies.
 
 
 53
 As for whether the underlying plaintiffs will or could amend their complaint to include damages, LSC argues that the district court has the power to grant damages even though they were not prayed for in the complaint. Although a federal court has the authority to award damages in certain situations, it would be speculative to rely upon whether the district court might exercise its inherent power to award damages if none have been sought, and then require appellee to defend the action. The result would be that the insurance company would be under an obligation to defend all lawsuits, regardless of policy provisions or allegations contained in the complaint or the extrinsic facts.
 
 
 54
 Relying on speculation that LSC will allege new facts cannot defeat a motion for summary judgment. Lassen Canyon Nursery, Inc. v. Royal Ins. Co. of America, 720 F.2d 1016, 1018 (9th Cir.1983) (citing Giddings, 169 Cal.Rptr. at 282); see also National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir.1983); Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir.1978).
 
 G. Attorneys' fees as a claim for damages
 
 55
 LSC contends that an award of attorneys' fees would constitute an "ultimate net loss" under the umbrella policies. The definition of ultimate net loss "does not include any expense of defense which any underlying insurer has paid or incurred or is obligated to pay either on its own behalf or on behalf of the insured." LSC argues that ultimate net loss excludes litigation expenses incurred by the insurer for itself and its insured, but is silent about litigation expenses incurred by the insured's opponent. Therefore, LSC argues that those fees are covered.
 
 
 56
 An attorneys fees request does not trigger a claim for damages and result in coverage under the policies. Attorneys' fees will compensate plaintiffs in the underlying action for the costs of litigation, not compensate them for a covered injury. Claims for attorneys' fees and costs do not qualify as damages as they are not amounts paid to compensate a party for a covered injury. See School District of Shorewood v. Wausau Ins. Co., 488 N.W.2d 82 (Wis.1992); Home Indem. Co. v. Avol, 706 F.Supp. 728, 729, n. 2 (C.D.Cal.1989), aff'd, 912 F.2d 469 (9th Cir.1990); City of Ypsilanti v. Appalachian Ins. Co., 547 F.Supp. 823 (E.D.Mich.1982), aff'd, 725 F.2d 682 (6th Cir.1983); Sokolowski v. Aetna Life & Cas. Co., 670 F.Supp. 1199 (S.D.N.Y.1987).
 
 CONCLUSION
 
 57
 The motions for summary judgment and partial summary judgment upon which the district court ruled depended on the facts as they were presented to the district court. The district court cannot reach a decision on an unknown set of facts or allegations that may arise in the future in the underlying action. LSC failed to establish material issues of fact. The district court correctly applied the relevant substantive law. Therefore, the district court's decision is
 
 
 58
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It is clear that the district court did consider LSC's extrinsic evidence to determine whether an invasion of privacy had already occurred, and correctly concluded that damages had not occurred:
 Furthermore, plaintiff alleges that the release of certain redacted employee resumes, albeit with identifying information eliminated, creates potential for invasion of privacy claims for damages. However, the underlying action's invasion of privacy claims seek equitable remedies and not damages. Since the CGL policy, as well as the other policies, very conspicuously and unambiguously covers only the risk of personal injury suits for damages, the underlying suit for equitable relief is not a covered risk.