[No. A100618. First Dist., Div. One. July 23, 2003.]

TERRENCE A. BEARD, Plaintiff and Appellant, v.
GARY GOODRICH et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

1032

**COUNSEL**

Terrence A. Beard, in pro. per.; and Geordan Goebel for Plaintiff and Appellant.

Gagen, McCoy, McMahon & Armstrong and Patrick J. McMahon, for Defendant and Respondent.

OPINION

**STEIN, J.**—Attorney Terrance A. Beard appeals from a judgment resolving an attorney fee issue between Beard and his former client, Gary Goodrich.

We affirm.

## BACKGROUND

On December 31, 1997, Goodrich, doing business as Antioch Alloy and Pacific Rims, Inc., was sued by his lessor, Michael H. Clement Corporation (Clement), who claimed that Goodrich had been discharging toxic waste materials on the leased premises. Clement sought damages of $1,024,333.65. Goodrich apparently took the position that Clement's suit lacked merit, had been instituted in retaliation for Goodrich's refusal to do business with Clement and was simply the last of a number of acts of harassment and retaliation. Goodrich hired Beard to defend him from Clement's suit and to file a cross-complaint on his behalf against Clement. As relevant here, Goodrich and Beard agreed that Goodrich would pay Beard a retainer of $20,000, an amount that later was increased to $40,000. The remainder of their fee agreement was stated in the following language:

"Contingency Fee: Client agrees to pay Attorney a contingency fee of 40 percent of the total net recovery obtained by Client, less that portion of the retainer actually paid by Client. The term 'net recovery' means the total of all amounts received by Client through settlement, arbitration award or judgment, from which will be subtracted all unpaid costs and disbursements .... Net recovery shall include the value of all consideration received or awarded Client, including, but not limited to, the forgiveness or discharge of debt."

The matter went to trial. A jury returned a verdict that Clement take nothing on its complaint, finding that Goodrich did not breach his lease with Clement. It awarded Goodrich $77,873 on a theory of constructive eviction and $50,000 for intentional infliction of emotional distress, plus $59,360 in punitive damages, for a total damages award of $187,233.

The lease agreement between Goodrich and Clement contained an attorney fee provision, and Goodrich therefore moved for an award of attorney fees as costs under Civil Code section 1717. The court ruled that Goodrich, as the prevailing party, was entitled to $394,925 in attorney fees. It then entered judgment in favor of Goodrich in the amount of $187,233 in damages, and awarded costs, including attorney fees, in the amount of $407,086.99.

Clement appealed from the judgment. On October 18, 2000, Clement and Goodrich entered into a settlement agreement. Clement and his insurer agreed

to pay a total of $599,000 to Goodrich and Beard and to abandon the appeal. Clement and Goodrich further agreed that the judgment in the matter would be vacated and that the entire action, including all cross-actions, would be dismissed with prejudice. In accordance with this agreement, the action was dismissed on October 19, 2000.

After settlement, Beard sent Goodrich a letter outlining his theory for division of the settlement money. The letter points out that Goodrich already had paid $40,000 towards attorney fees and $25,795.33 in costs. There were unpaid costs of $10,021.76. The court had awarded Beard $394,925 in attorney fees. Beard proposed that he disburse to himself the amount of the outstanding costs plus the full amount of fees awarded, and disburse the remaining funds, $194,053.24, to Goodrich. Goodrich disagreed, contending that the amount claimed by Beard exceeded that to which he was entitled under the fee agreement.

The parties were unable to agree on the division of the settlement proceeds. Beard, however, disbursed $194,052 to himself and a like amount to Goodrich, as these amounts were not disputed. He retained the remaining settlement funds of $210,895.52, and on April 17, 2001, filed a complaint in the superior court, seeking a declaration that he was entitled to payment of the full amount of attorney fees awarded in the underlying action plus the costs incurred in that action. Goodrich cross-complained for failure to pay sums due under the contingency fee contract, claiming entitlement to 60 percent of the settlement funds. The trial court agreed with Goodrich, entering judgment in his favor in the amount of $210,085.77. It found that under the terms of the parties' fee agreement, Beard was entitled to 40 percent of the settlement amount of $599,000, after a deduction of $7,103.32 for unpaid costs. Beard, therefore, was entitled to $236,758.67. Goodrich already had paid Beard $40,000, so the amount due Beard was reduced to $196,758.67. As Beard earlier had disbursed $194,052.24 to himself, he was due only $2,706.43. The court also awarded Beard $24,375 on a theory of quantum meruit for services performed after judgment was entered in the Clement matter, and awarded prejudgment interest to both parties.

## DISCUSSION

## I.

### *Attorney Fees*

Beard asserts two somewhat conflicting theories in support of his claim that the trial court erred in limiting his fees to 40 percent of the settlement amount, less costs. First, he points out that the trial court in the underlying

litigation had awarded attorney fees of $394,925. Beard contends that those fees were awarded to *him* and not to Goodrich. He contends it follows that by limiting his fees to 40 percent of the settlement amount, the trial court effectively gave Beard's fees to Goodrich, a result that, according to Beard, is inconsistent with the decision in *Flannery v. Prentice* (2001) 26 Cal.4th 572 [110 Cal.Rptr.2d 809, 28 P.3d 860]. Second, Beard contends the court misinterpreted the fee agreement. He points out that under the terms of the agreement, he was entitled to 40 percent of Goodrich's "net recovery," defined as including not only amounts received, but all consideration, including "the forgiveness or discharge of debt." In Beard's view, the contract should have been interpreted to include not only 40 percent of Goodrich's recovery on his cross-complaint, but also 40 percent of the unrecovered damages sought by Clement—$1,024,333.65. Beard appears to claim entitlement to some combination of court-awarded fees and fees under the parties' fee agreement, asking this court first to decide if he is entitled to the full amount of the fee award in the underlying litigation, and second to decide if he is entitled to fees over and above the attorney fee award.

### *Court-Awarded Fees*

The lease agreement between Goodrich and Clement provided: "Should any action be instituted to enforce any of the provisions of this lease, the prevailing party shall be entitled to recover reasonable expenses of such proceedings, including reasonable attorneys' fees."

Clement instituted an action, and Goodrich prevailed at trial. The trial court, therefore, entered judgment awarding attorney fees to Goodrich as an element of Goodrich's costs. The parties then, however, settled the case, and as part of their settlement vacated the judgment and dismissed the entire matter. The court's award of fees was vacated along with the rest of the judgment, and for all practical purposes, therefore, the terms of the settlement superseded the terms of the judgment. As the terms of the settlement did not include an award of attorney fees, Beard's entitlement to fees was defined not by the judgment nor by the settlement agreement, but by his contract with Goodrich.

Beard contends that the settlement of the case and vacation of the judgment had no effect on his right to court-awarded fees. In support of this argument, Beard cites two insurance cases, *City of Laguna Beach v. Mead Reinsurance Corp.* (1990) 226 Cal.App.3d 822 [276 Cal.Rptr. 438] and *Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810 [54 Cal.Rptr.2d 176]. As relevant here, judgments were entered against the cities in those cases on a theory of inverse condemnation. The cities then settled the cases, and as part of the settlement, the judgments were vacated.

The cities sought indemnity from their insurers, but the insurers, citing exclusions for liability arising from inverse condemnation, denied coverage. The courts found, in essence, that for purposes of insurance coverage, the juries' factual determinations were binding on the cities notwithstanding the vacation of the judgment entered on the juries' verdicts.

Since the present case does not involve issues of insurance coverage, the cited cases have no application here. Moreover, at the most, the cases stand for the argument that a party is bound by a factual finding in an action notwithstanding that the judgment entered on that finding has been vacated. The factual finding here is that Beard did work valued at $394,925; however, that finding cannot establish a legal right to recover fees in that amount. The right to recover the fees was established by the judgment and was extinguished when the judgment was vacated. Beard's only right to recover fees, therefore, was defined by his contract with Goodrich, which was limited to the right to recover from Goodrich a contingency fee of 40 percent of the total net recovery.

*Flannery v. Prentice, supra,* 26 Cal.4th 572, cited by Beard, also has no application here. The Supreme Court in *Flannery* considered whether attorney fees awarded under Government Code section 12965, part of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), belong to the litigant or to the litigant's attorney. The court ultimately concluded, simply, "that any proceeds of a section 12965 fee award exceeding fees the client already has paid belong, absent a contractual agreement validly disposing of them, to the attorneys for whose work they are awarded." (*Flannery v. Prentice, supra,* at p. 577.) The present case, unlike *Flannery,* was not brought under the FEHA. Fees were not awarded under Government Code section 12965. They were awarded under the parties' contract and Civil Code section 1717. The *Flannery* court's characterization of fees awarded under Government Code section 12965, therefore, has no bearing on this case. Even if that characterization were relevant, however, it would not control here. The holding in *Flannery,* by its terms, is limited to cases where the parties do not have a fee agreement. The parties here do have a fee agreement. Moreover, *Flannery* applies only to court-awarded fees. Here, as discussed above, there are no court-awarded fees. The vacation of the judgment effectively eliminated the fee award. Nothing in *Flannery* supports the notion that an attorney is entitled to a fee award that was vacated as part of a postjudgment settlement.

### Contractual Fees

Beard contends that the court erred in finding that the fee agreement did not provide for an award of 40 percent of the unrecovered damages claimed

by Clement. The merits of this contention turn on the meaning of the contractual provision defining Goodrich's net recovery as including "the forgiveness or discharge of debt."

The interpretation of a contract involves a two-step process. " 'First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e., whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.]' [Citation.] The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. [Citation.] The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence." (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 [50 Cal.Rptr.2d 323].)

The trial court ruled that the phrase "forgiveness or discharge of debt" was not ambiguous and that undetermined and unrecovered claims do not constitute the forgiveness or discharge of debt. As this determination was based on a consideration of extrinsic evidence, the question on appeal is whether substantial evidence supports the trial court's ruling, or whether the evidence compelled a finding that the phrase is reasonably susceptible of the meaning attributed to it by Beard—that "debt" includes unrecovered claims.

Beard produced evidence, in the form of his own testimony, that he believed and intended the phrase to include unrecovered claims. The trial court apparently accepted Beard's representations as to his subjective intent as true. Beard also testified that Goodrich told him that he lacked the funds to pay Beard on an hourly basis, and that Beard ultimately agreed to represent Goodrich on a "reverse contingency" arrangement under which he would receive a contingency fee based on the value of any claims Goodrich avoided through a successful defense, in addition to a percentage of any funds recovered through a cross-complaint. Beard testified that he explained to Goodrich that the "reverse contingency" arrangement provided a basis for attorney fees if the parties ultimately decided that each side simply would walk away from the conflict.

Goodrich testified that Beard never spoke of working under a reverse contingency arrangement or suggested that he would be entitled to fees over and above the retainer if there was no recovery on Goodrichs cross-complaint. To the contrary, according to Goodrich, Beard agreed to take the

$20,000 (and later $40,000) retainer and to litigate "the whole ball of wax," meaning defend the underlying suit and prosecute the cross-complaint, for 40 percent of the net recovery. For example, if the case settled, Beard would get 40 percent of the settlement. Goodrich also testified that Beard believed that Goodrich had a very strong case, pointing out that Clement had been involved in numerous lawsuits and had engaged in unlawful business practices. Beard stated a belief that Goodrich would be awarded $1.5 million or more, explaining that he would get 40 percent of that amount. In addition, Beard's postsettlement letter to Goodrich claimed entitlement to 40 percent of the settlement amount, but did not mention any entitlement to 40 percent of the value of unrecovered claims.

While we resolve all factual disputes in the extrinsic evidence in favor of the trial court's determination, the evidence that Beard may have intended, subjectively, for the phrase "forgiveness or discharge of debt" to include the value of unrecovered claims, is irrelevant. " 'A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.' [Citations.] 'Contract formation is governed by objective manifestations, not the subjective intent of any individual involved. [Citations.] The test is "what the outward manifestations of consent would lead a reasonable person to believe." [Citation.]' [Citation.]" (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1277 [114 Cal.Rptr.2d 898].) The question, then, is not what Beard subjectively intended, but what a reasonable person would believe the parties intended.

We turn first to the words of the provision at issue. ■ The words of a contractual provision will be interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by usage. "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 [71 Cal.Rptr.2d 830, 951 P.2d 399]; and see Civ. Code, § 1644.) As Goodrich points out, the ordinary meaning of the term "debt" is something that is owed.[1] A reasonable person would ·not construe it to include an unresolved and possibly unfounded claim, such as the claims asserted by Clement against Goodrich. Nor would the parties' communications cause a reasonable person to believe that the fee agreement included an intent to pay 40 percent of any unrecovered claims. Although Beard claims that he in fact communicated such an intent to Goodrich, Goodrich claims Beard said no such thing, instead communicating that he would be entitled to

---

[1] Merriam-Webster's Collegiate Dictionary (10th ed. 2001) page 296, for example, defines "debt" as "something owed."

a percentage of any money awarded to Goodrich on his cross-complaint. The trial court found Goodrich to be the more credible witness, and that finding will not be disturbed here.

The circumstances would not have suggested to a reasonable person that Beard was to recover 40 percent of Clement's unliquidated claims under a reverse contingency arrangement. A reverse contingency arrangement is uncommon. A reasonable person would expect such an arrangement to be clearly defined. Beard complains that it would be unreasonable to assume that he intended to receive no compensation for a defense that avoided claims of $1,024,333.65. Goodrich testified, however, that Beard expressed to Goodrich that Goodrich was likely to recover a substantial amount of money—up to $1.5 million—on the cross-complaint, and that Beard would be entitled to 40 percent of that amount, or to 40 percent of any amount received in settlement of the case. There was also evidence that Beard and Goodrich assumed that Clement's claims were unfounded and easily defended, and that Goodrich paid Beard a $40,000 retainer fee. There is nothing unreasonable about a conclusion that under these circumstances, Beard was willing to risk receiving nothing over and above the retainer paid by Goodrich, when he stood to gain a substantial amount of money if Goodrich prevailed on the cross-complaint or if the parties settled the case. Since Goodrich did not have the money to pay Beard an hourly rate for his defense, it would make little sense for him to agree to pay Beard a percentage of the value of Clement's claims. Finally, it would not have been reasonable for the parties to expect Goodrich to pay a percentage of every claim, whatever its merits, asserted by Clement, and the agreement provided no means of calculating the actual value of Clement's unliquidated claims.

 On this evidence, the trial court was justified in concluding that the phrase "forgiveness or discharge of debt" is not reasonably susceptible of a meaning that includes "unrecovered unliquidated claims." The trial court, therefore, correctly ruled that Beard had not shown that the phrase was ambiguous.[2]

As an alternative argument, Beard claims that the undisputed evidence shows that there was "no meeting of the minds" as to the contingency fee provisions of the agreement, and that no contract, therefore, was formed. The assertion is based, again, on Beard's asserted subjective intent that the contract provide for fees on a reverse contingency basis. It is true that mutual consent is an essential element of any contract, and that mutual consent means the parties must assent to the same thing in the same sense.

---

[2] Even were we to conclude that the phrase is ambiguous, all the evidence discussed above would compel us to conclude that any ambiguity would have to be resolved in favor of Goodrich.

(Civ. Code, § 1580; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 358–359 [72 Cal.Rptr.2d 598].) The rule, however, is that " '[t]he existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 [71 Cal.Rptr.2d 265].) Beard's subjective intent, or subjective consent, therefore is irrelevant. It is enough that a reasonable person would understand that the parties consented to the contract and consented to the same terms in the same sense.

### II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.

---

*See footnote, *ante*, page 1031.